THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATES OF ALASKA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, VIRGINIA, AND WASHINGTON, *ex rel.* OMNI HEALTHCARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MD SPINE SOLUTIONS LLC, D/B/A MD LABS INC., DENIS GRIZELJ, MATTHEW RUTLEDGE, AND DOE HEALTHCARE PROVIDERS 1 – 100, <br><br> Defendants. | Civil Action No. 18-12558 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE RELATOR'S
AMENDED COMPLAINT– LEAVE TO FILE GRANTED ON JUNE 23, 2022**

July 1, 2022

Alexander O. Canizares
Barak Cohen
Matthew J. Moffa
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone:    202.654.6200
Facsimile:    202.654.6211

*Attorneys for Defendants MD Spine
Solutions LLC, d/b/a MD Labs Inc., Denis Grizelj,
and Matthew Rutledge*

# **TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.   The Relator Fails To Satisfy The Heightened Pleading Requirements Under Rule 9(b) And The Controlling Law In This Circuit Regarding FCA Claims ........................... 2

    A.   The Relator Relies Upon Allegations That Have Been Dismissed or Released ................................................................................................................. 2

    B.   The Relator Fails to Plead Plausible FCA Violations With Particularity As To MD Labs, Grizelj, and Rutledge ......................................................................... 3

        1.   The Relator's Use of "Shotgun" Pleading Warrants Dismissal ................. 3

        2.   The Relator Fails to Adequately Plead the "Who" of Any Alleged Violations of the FCA ................................................................................ 5

        3.   The Relator Fails to Properly Plead the "What," "When," and "Where" of Any Alleged FCA Violation .................................................... 7

        4.   The Relator Does Not Satisfy its Burden of Alleging with Particularity "How" Any Claims Were False or Fraudulent ...................... 8

        5.   The Relator Does Not Adequately Allege Materiality ............................ 10

        6.   The Relator Fails to Plausibly Allege Scienter ........................................ 11

II.  The Relator's Allegations Are Time-Barred To The Extent That They Rely Upon Conduct That Is Outside The FCA's Six-Year Statute of Limitations ............................ 12

III. The Relator Fails To Salvage Its State-Law Claims (Counts II Through XXXIII) ......... 12

IV.  The Court Should Deny The Relator's Request, In The Alternative, For Leave To File A Second Amended Complaint ................................................................................. 13

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Clorox Co. v. Proctor & Gamble Comm. Co.*,
228 F.3d 24 (1st Cir. 2000) ............................................................................................................6

*New Hampshire Right to Life v. Dep't of Health and Human Servs.*,
976 F. Supp. 2d 43 (D. N.H. 2013) ................................................................................................8

*Todisco v. Verizon Comms., Inc.*,
497 F.3d 95 (1st Cir. 2007) ............................................................................................................5

*United States ex rel. Booker v. Pfizer, Inc.*,
847 F.3d 52 (1st Cir. 2017) ............................................................................................................9

*United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002) .....................................................................................................6

*United States ex rel. Cooley v. ERMI, Inc.*,
2022 WL 1185155 (N.D. Ga. Apr. 21, 2022) ............................................................................4, 5

*United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal.*,
713 F.3d 662 (1st Cir. 2013) ..........................................................................................................4

*United States ex. rel. Gardner v. Vanda Pharm. Inc.*,
No. 17-cv-00464, 2020 WL 2542121 (D.D.C. May 19, 2020) ...................................................10

*United States ex rel. Ge v. Takeda Pharm. Co.*,
737 F.3d 116 (1st Cir. 2013) ..............................................................................................3, 7, 9

*United States ex rel. Grenadyor v. Ukrainian Village Pharm., Inc.*,
772 F.3d 1102 (7th Cir. 2014) ....................................................................................................7, 9

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
360 F.3d 220 (1st Cir. 2004) .......................................................................................................8, 9

*United States ex rel. Kelly v. Novartis Pharms. Corp.*,
827 F.3d 5 (1st Cir. 2016) .............................................................................................5, 6, 9, 13

*United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*,
865 F.3d 29 (1st Cir. 2017) ............................................................................................................9

*United States ex rel. Walsh v. Eastman Kodak Co.*,
98 F. Supp. 2d 141 (D. Mass. 2000) .......................................................................................2, 10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Vibe Micro, Inc. v. Shabanets*,
  878 F.3d 1291 (11th Cir. 2018) ...........................................................................................4

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015) ...........................................................................................4

**STATUTES**

31 U.S.C. §§ 3729-3733 (False Claims Act) ........................................................................... passim

31 U.S.C. § 3729(a)(1)(A) ...........................................................................................................11

31 U.S.C. § 3729(a)(1)(B) ...........................................................................................................11

42 U.S.C. § 1320a—7b(b) ...........................................................................................................10

740 Ill. Comp. Stat. 92 .................................................................................................................12

**RULES**

Fed. R. Civ. P. 8 ....................................................................................................................1, 4, 6

Fed. R. Civ. P. 8(a) .................................................................................................................. 4, 6

Fed. R. Civ. P. 9(b) ............................................................................................................. passim

Fed. R. Civ. P. 10(b) ....................................................................................................................4

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1, 6, 13

Fed. R. Civ. P. 15(a)(2) ...............................................................................................................13

Pursuant to the Court's June 23, 2022 order, ECF No. 97, and Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, defendants MD Spine Solutions LLC, d/b/a MD Labs, Inc. ("MD Labs"), Denis Grizelj, and Matthew Rutledge (collectively, "MD Labs & Owners"), respectfully submit this reply in support of their motion to dismiss the amended *qui tam* complaint filed by the relator, Omni Healthcare, Inc. ("the relator"), ECF No. 84, and in response to the opposition to our motion filed by the relator, ECF No. 93.  Because the relator fails to rebut our showing that the relator does not state plausible claims with the requisite particularity, the motion should be granted, and the amended complaint should be dismissed with prejudice.

## SUMMARY OF ARGUMENT

As we established in our motion, the relator's amended complaint is fatally deficient and should be dismissed with prejudice in accordance with Rule 9(b) and settled precedent.  In its memorandum in opposition to our motion, the relator repeats allegations in its amended complaint at length and insists, without any basis, that they are sufficient.  But the relator's arguments are unavailing.  The relator fails to address the inherent flaws in its amended complaint, flaws that persist even accepting the amended complaint's factual allegations as true.  In particular, the amended complaint (1) relies upon allegations have been released or dismissed and thus may not be considered by the Court; (2) uses impermissible "shotgun" pleading instead of particularized factual allegations and legal theories, and (3) fails to set forth the "who, what, when, where, and how" of any putative violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, on the part of MD Labs, Grizelj, or Rutledge.  Def. Mot. at 6-19.  As demonstrated below, the amended complaint should be dismissed with prejudice.  Further, to the extent that the relator relies upon conduct beyond the statute of limitations, its allegations are time-barred.  And the relator's state-law claims (Counts II through XXXII) fail as a matter of law.  Finally, the relator's request to amend its complaint yet again is unsupported and such relief

would be futile anyway.

## ARGUMENT

I. **The Relator Fails To Satisfy The Heightened Pleading Requirements Under Rule 9(b) And The Controlling Law In This Circuit Regarding FCA Claims**

As we have explained, Rule 9(b) and the case law in this Circuit impose a heightened pleading standard for alleged violations of the FCA. Def. Mot. at 7-9. The relator does not dispute the standard, but argues that it satisfies the standard. As explained below, the relator is wrong.

### A. The Relator Relies Upon Allegations That Have Been Dismissed or Released

The relator asserts that it "does not rely" on any released allegations—but its amended complaint demonstrates otherwise. *See* Rel. Opp. at 11-12. The relator has failed to meaningfully respond to our contention that numerous allegations in the amended complaint have no apparent connection to the alleged submission or causing the submission of claims for UTI testing and accordingly are not properly the basis for the relator's claims. Def. Mot. at 10-11 (citing Am. Compl. ¶¶ 17, 19, 27, 152-156, 197, 174, 177-181, 185, 191, 22-205). The relator's agreement to release claims in paragraph 5 of the Settlement Agreement and the Court's February 24, 2022 order dismissing all but the Non-Released UTI Claims are binding, and must be given effect. *See* ECF No. 63-1 (Corrected Joint Stipulation); ECF No. 68. *See United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 146-47 (D. Mass. 2000) (denying claims where settlement agreement contained "clear and unambiguous" terms releasing them).

The relator argues that we "ignore[] the structure" of the amended complaint, "which begins by broadly describing the wrongful conduct" and its harm to the public. Rel. Opp. at 11-12 (citing 171 paragraphs of the amended complaint). But the Settlement Agreement and the Court's February 24, 2022 order require the Court to disregard allegations that "broadly

describ[e]" conduct that have *nothing to do* with claims for UTI testing. Notwithstanding the relator's arguments, the amended complaint impermissibly stretches beyond allegations concerning UTI testing, and also includes allegations that go far beyond providing mere background, including vague references to pharmacogenetic testing, "pass-through billing," co-pay and coinsurance, and "improper billing codes." *See* Def. Mot. at 10. Because the amended complaint contains numerous allegations that defy the Court's dismissal order—and because each of the relator's 33 counts incorporates each paragraph of the amended complaint—our motion should be granted.

> **B.    The Relator Fails to Plead Plausible FCA Violations With Particularity As To MD Labs, Grizelj, and Rutledge**

On their own, the deficiencies noted above justify dismissing the amended complaint. But even if this were not the case, the relator also fails to overcome our showing that its amended complaint does not satisfy its heightened burden under Rule 9(b) and relevant case law requiring that it set "forth with particularity the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 123 (1st Cir. 2013).

> **1.    The Relator's Use of "Shotgun" Pleading Warrants Dismissal**

As to the "who" of any alleged fraud, the relator does not seriously dispute that Count I is an improper "shotgun" pleading. Def. Mot. at 11-12 (citing Am. Compl. ¶¶ 251-259). Tellingly, the relator argues that "[*e]ven if*" it did use "shotgun" pleading, such a "pleading deficiency" is usually addressed with a motion for a more definite statement, and that nevertheless the "body" of its amended complaint has "well-pled" allegations. Rel. Opp. at 12-13 (emphasis added). But the relator is wrong, and its allegations are neither "well-pled" nor sufficient to salvage Count I.

Count I is a classic example of inappropriate "shotgun" pleading in at least two ways. First, it "commits the sin of not separating into a different count each cause of action or claim for

relief" and, second, it commits the "relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Count I thus fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*; *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (describing the numerous reasons why shotgun pleadings violate pleading requirements).

The relator tries—without success—to evade this problem by misleadingly arguing that the "body" of the amended complaint somehow cures any deficiency stemming from its "shotgun" pleading. Rel. Opp. at 12-13. The relator's argument is belied by the fact that the amended complaint is wholly deficient, relying upon generic allegations of fraudulent schemes. For example, the relator repeatedly uses the term "MD Labs & Owners" and, in some cases, "defendants" (including unnamed healthcare providers) without specificity. *See* Def. Mot. at 11-12. And Count I jumbles together no fewer than four legal theories of liability under the FCA into a single count, in violation of Rules 8(a) and 10(b). *See United States ex rel. Cooley v. ERMI, Inc.*, 2022 WL 1185155, at **4-5 (N.D. Ga. Apr. 21, 2022) (relator's "shotgun" complaint "lump[ed] her presentment claims together with her make-or-use claims" and "asserts all of her claims against multiple Defendants but, in some instances, fails to differentiate acts and omissions giving rise to each one's liability, as required by Rule 8") (internal citation omitted).

Although pleading deficiencies may be remedied through a motion for a more definite statement or court-ordered repleader, *United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal.*, 713 F.3d 662, 664 n.2 (1st Cir. 2013), such relief is neither required nor warranted here. We specifically raised the relator's objectionable "shotgun" pleading in its original

complaint in our initial motion to dismiss. Def. Mem. ISO Mot. to Dismiss, Mar. 21, 2022, at 13, ECF No. 70. The relator failed, however, to cure the problem and inexplicably doubled down on its impermissible "shotgun" approach in its amended complaint. Giving the relator yet another opportunity to amend its complaint would be futile given that, as explained below, the relator is unable to satisfy its burden of pleading its allegations with particularity as required under Rule 9(b). *See United States ex rel. Kelly v. Novartis Pharms. Corp.*, 827 F.3d 5, 15 (1st Cir. 2016) (affirming dismissal of FCA claims with prejudice); *Todisco v. Verizon Comms., Inc.*, 497 F.3d 95, 98 (1st Cir. 2007) (amendment may be denied if it "would serve no useful purpose").

### 2. The Relator Fails to Adequately Plead the "Who" of Any Alleged Violations of the FCA

The relator also fails to rebut our showing that it does not sufficiently plead the "who" of its allegations. Def. Mot. at 12-13. The relator does not dispute the case law we cited establishing that pleadings must allege sufficient facts with particularity as to *each defendant*. *Id.* Indeed, in "a case involving multiple defendants, Rule 9(b)'s particularity standard . . . demands 'specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." *Cooley*, 2022 WL 1185155, at *4 (citation omitted). Nevertheless, the amended complaint improperly combines allegations against multiple defendants—and does not cite a single instance of wrongdoing on the part of Grizelj or Rutledge. *See* Def. Mot. at 12. The relator misleadingly asserts that it "pleads in the amended complaint" that Grizelj and Rutledge "directed the scheme to charge government programs and commercial payers for medically unnecessary UTI testing." Rel. Opp. at 13 (citing Am. Compl. ¶¶ 172 and 179). But the paragraphs cited by the relator (172 and 179) say no such thing—in fact, they do not even mention Grizelj or Rutledge by name.

5

In its opposition, the relator cites the Settlement Agreement and Corporate Integrity Agreement for the proposition that Grizelj and Rutledge were "actively managing and operating MD Labs." *Id*. But "actively managing and operating" a company does not violate the FCA. To overcome dismissal under Rules 8 and 9(b), it is not enough to broadly allege that a "scheme" "was orchestrated at the direction of Rutledge and Grizelj" without alleging specific, non-conclusory facts that, if true, establish each element of FCA liability as to each of the named defendants. *See* Def. Mot. at 12 (citing Am. Compl. ¶ 4). The relator's "[c]onclusory allegations and references to 'plans and schemes' are not sufficient." *Kelly*, 827 F.3d at 15 (citation omitted). Rule 9(b) "guards against guilt by association." *United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (quotation marks omitted). The relator's bare allegations against Grizelj and Rutledge are neither plausible nor particular and fail to satisfy even the *Twombly* standard of pleading under Rule 8(a), let alone Rule 9(b).

The relator's arguments in its opposition based upon the Settlement Agreement and the Corporate Integrity Agreement (the latter of which is not cited in the amended complaint and thus is not properly considered on a Rule 12(b)(6) motion)[1] do not overcome the glaring lack of particularity in the amended complaint. The Settlement Agreement expressly carves out the Non-Released UTI Claims from its scope and specifies that it "constitutes the complete agreement between the Parties[.]" ECF No. 85-1 at 2-3, 18. The agreement is thus of no help to the relator. And even assuming for argument's sake that the Corporate Integrity Agreement is a "public record" capable of being considered by the Court under Rule 12(b)(6), it is irrelevant to

---

[1] Unlike the Corporate Integrity Agreement, the Settlement Agreement is explicitly relied upon in the amended complaint, Am. Compl. ¶¶ 40-41, and thus may be considered by the Court in accordance with Rule 12(b)(6) without converting our motion into a summary judgment motion. *See Clorox Co. v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

6

the allegations in the amended complaint related to UTI testing. Rel. Opp. at 13. The Corporate Integrity Agreement is a forward-looking document related to the Settlement Agreement to which the relator is not a party and which says nothing regarding UTI testing.

### 3. The Relator Fails to Properly Plead the "What," "When," and "Where" of Any Alleged FCA Violation

As to the "what," "when," and "where" of any alleged FCA violations, the relator fails to rebut our demonstration that its amended complaint falls short. Def. Mot. at 13-14. The relator repeats its allegations in the amended complaint, often at length. But the relator notably fails to identify any false or fraudulent representations on the part of MD Labs & Owners or specify the "time, place, and content" of any such representations. *Id.* at 13 (citing *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004); *see United States ex rel. Grenadyor v. Ukrainian Village Pharm., Inc.*, 772 F.3d 1102 (7th Cir. 2014) (to plead fraud with the requisite particularity, a complaint "must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff") (internal quotation marks omitted). The relator likewise fails to allege specific facts establishing that MD Labs misused Modifier 91 or standing orders (or that it did so in connection with claims for UTI testing). *See* Def. Mot. at 13-14. Accordingly, these allegations cannot survive a motion to dismiss.

The relator's vague assertions that MD Labs submitted two claims in May 2018 for "medically unnecessary" UTI tests are unaccompanied by any specific, non-conclusory allegations that, if true, establish the existence of any knowingly false or fraudulent claims triggering FCA liability. *Id.* at 15 (citing Am. Compl. ¶¶ 224-225). Indeed, the relator fails to allege who submitted such claims or that MD Labs knew that such claims were false. *See Ge*,

737 F.3d at 124 (relator failed to provide specific details concerning alleged claims); *Karvelas*, 360 F.3d at 226 (same).  The relator thus fails to discharge its weighty burden under Rule 9(b).

### 4. The Relator Does Not Satisfy its Burden of Alleging with Particularity "How" Any Claims Were False or Fraudulent

The relator is unable to overcome the fact that its amended complaint does not plausibly allege "how" MD Labs & Owners violated the FCA, i.e., the element of falsity.  Def. Mot. at 14-16.  The relator's central argument—that MD Labs bills Medicare for unnecessary PCR tests to treat patients for UTIs—is unaccompanied by any allegations that PCR is prohibited or improper.  The relator's opposition fails to establish otherwise.  For example, in our motion, we explained that the relator points to nothing in the National Coverage Determination ("NCD") cited in its amended complaint that prohibits Medicare reimbursement for PCR testing of UTIs.  *Id.* at 14.  The relator's opposition brief does not even attempt to refute this statement—it says nothing about the NCD whatsoever.  Nor has the relator cited any support for its bald statement that it "is well-established" that panel testing of UTIs is not medically necessary.  Rel. Opp. at 4.  The relator's failure to address these central points is all but conclusive.[2]

The relator's purported kickback-related allegations likewise fall short.

*First*, the relator's allegations in paragraphs 15, 19, 27, and 37 do not specifically relate to UTI testing and are thus outside the Court's jurisdiction.  Def. Mot. at 15.  This is alone sufficient justification for dismissing the kickback allegations.

*Second*, nowhere in the amended complaint does the relator allege, much less allege with plausible, particularized allegations, the existence of any false claims submitted to Medicare (or

---

[2] The Court should reject any attempt by the relator to address issues for the first time in its sur-reply to which it already had an opportunity to respond in its prior brief.  *See New Hampshire Right to Life v. Dep't of Health and Human Servs.*, 976 F. Supp. 2d 43, 61 n.22 (D. N.H. 2013) ("This court ordinarily ignores theories raised for the first time in sur-reply.") (citation omitted).

Medicaid) based upon any alleged kickbacks. *Id.* at 15 (citing Am. Compl. ¶¶ 19, 27, 37). As we have explained, this omission is fatal because, in this Circuit, allegations of underlying schemes and other wrongful activity (such as kickbacks) "invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims submitted to the government that constitute the essential element of an FCA qui tam action." *Karvelas*, 360 F.3d at 232; *see also United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 57 (1st Cir. 2017) (an actual false claim is "the sine qua non" of an FCA violation); *Ge*, 737 F.3d at 124 (relator must "sufficiently establish that false claims were submitted for government payment" as a result of alleged misconduct); *Kelly*, 827 F.3d at 14 ("Nor is evidence of illegal conduct alone sufficient to state an FCA claim."); *cf. United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 865 F.3d 29 (1st Cir. 2017) (allegation that defendant induced third parties to file false claims requires providing evidence to strengthen an inference of fraud beyond a mere possibility, even if not necessarily providing details as to each false claim).

The Seventh Circuit's decision in *Grenadyor* illustrates the point. 772 F.3d at 1107-08. There, the Court held that a relator's allegations in its *qui tam* complaint that a defendant pharmacy provided kickbacks to customers did not satisfy Rule 9(b) because it did not identify even a single false claim submitted to the Government based upon such kickbacks, and did not "identify a single patient who received [a kickback] over the course of the year[.]" *Id.* The same defects exist here. Here, the relator does not allege specific facts establishing that it (or anyone else) received any kickbacks from MD Labs & Owners or that any kickback-tainted claims were submitted to the Government (or paid). Nor does the relator allege that the alleged "arrangement" it contends was discussed was ever entered into. Def. Mot. at 15-16. *See also United States ex. rel. Gardner v. Vanda Pharm. Inc.*, No. 17-cv-00464, 2020 WL 2542121, at

9

*16 (D.D.C. May 19, 2020) (relator "fail[s] to establish that any *actual claims* for [a drug] were submitted to government payors as a result of" alleged kickbacks through donations).

*Third*, the relator fails to make specific allegations that, if true, establish a violation of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a—7b(b). Def. Mot. at 16. As previously explained, the relator offers no specific or supported explanation as to how alleged discussions between MD Labs sales representatives concerning an "agreement to 'split profits'" on tests or other matters violated the AKS or, for that matter, the FCA. *Id.*; *see Walsh*, 98 F. Supp. 2d at 149 (relator who alleged violations of the AKS "never alleges with the requisite particularity that [the defendant] knowingly presented, caused the presentation of, or conspired to present any false cost report to the government"). Even accepting the relator's factual allegations as true, it fails to state a claim.

### 5. The Relator Does Not Adequately Allege Materiality

As we explained in our motion, the relator has not adequately pleaded materiality—a critical element of FCA liability that is both "rigorous" and "demanding." Def. Mot. at 16-17 (citing *Universal Health Servs., Inc. v. United State ex rel. Escobar et al.*, 579 U.S. 176, 192 (2016)). The relator argues that it adequately pleaded materiality when it alleged that "[t]he Government, unaware of the falsity of the records, statements and claims made or caused to be made by MD Labs & Owners paid and continues to pay the claims that would not be paid but for MD Labs & Owners' illegal conduct." Rel. Opp. at 17-18 (citing Am. Compl. ¶ 257). The relator also contends that the Settlement Agreement confirms that "false claims of this nature . . . are material." *Id.* at 18. The relator is incorrect.

The statement quoted above in paragraph 257 of the amended complaint is deficient on its face. Apart from the fact that it does not identify the cited "records, statements and claims" with any specificity, the relator fails to explain how they are false. The relator has not plausibly

alleged detailed facts establishing that there is any underlying non-compliance here, much less that it is a non-compliance that the Government regards as material to its payment decision. Nor does the relator identify instances in which the Government refuses to pay similar claims for UTI testing. Def. Mot. at 17 (citing *Gardner*, 2020 WL 2542121, at *8-11 (relator failed to plead materiality).

The relator's reliance on the Settlement Agreement to establish materiality is misplaced. *Id.* at 17-18. The relator asserts that because the claims settled by the Government and MD Labs & Owners in the Settlement Agreement concerning Urine Drug Testing ("UDT") are "closely related" to the UTI testing claims, the latter must be "material" to the Government. *Id.* at 18. To the contrary, if anything, the Settlement Agreement actually highlights the insignificance of the relator's UTI claims. The Settlement Agreement resolved certain allegations of "Covered Conduct" and expressly carved out the relator's Non-Released UTI Claims. The Government also expressly "decline[d] to intervene" in the relator's complaint as it relates to UTI issues. ECF No. 45 at 1. At best, the declination suggests that the UTI claims are not material here. The relator's failure to plead materiality in accordance with *Escobar*'s standard warrants dismissal.

      **6.**      **The Relator Fails to Plausibly Allege Scienter**

The relator likewise fails to plausibly allege the element of knowledge, or scienter, which is essential to any FCA claim. Def. Mot. at 18-19; 31 U.S.C. § 3729(a)(1)(A), (B). As we explained, the relator's insertion of the word "knowingly" into Count I when reciting its theories of liability is fruitless and not a substitute for particularized pleading of factual allegations sufficient to establish knowledge on the part of MD Labs & Owners. Def. Mot. at 18-19. In its opposition, the relator fails to establish otherwise. The relator's unsupported assertion that "[g]iven the nature of the scheme, there is no way in which Defendants" could have acted without knowledge "of what they were doing" is baseless conjecture. Rel. Opp. at 18. The

relator has offered no basis to conclude that the NCD it cites was violated, much less plausible allegations that any such violation was knowing. Nor does it cite any authoritative guidance warning MD Labs & Owners away from billing Medicare for UTI testing. Def. Mot. at 18-19 (citing cases concerning knowledge standard). The failure to plausibly allege scienter is, on its own, sufficient grounds to dismiss the amended complaint.

In sum, because the amended complaint fails to plead FCA violations with particularity, the Court should dismiss it as to MD Labs, Grizelj and Rutledge with prejudice.

**II.    The Relator's Allegations Are Time-Barred To The Extent That They Rely Upon Conduct That Is Outside The FCA's Six-Year Statute of Limitations**

The relator argues that conduct cited in the amended complaint as allegedly occurring in 2018 is within the FCA's statute of limitations in this case. Rel. Opp. at 19. This misses the point. The statute of limitations problem arises from the fact that the amended complaint contains no time boundaries of any kind. To the extent that the relator relies upon allegations occurring prior to the statute of limitations period, those allegations are time-barred.

**III.   The Relator Fails To Salvage Its State-Law Claims (Counts II Through XXXIII)**

The relator argues that it has adequately stated claims under state law in Counts II through XXXIII. Rel. Opp. at 19-20. But as explained in our motion, the relator's failure to state claims under the federal FCA is fatal to its derivative state-law counts. Def. Mot. at 19-20. The relator's state-law counts rise or fall with Count I, a fact the relator does not dispute. Because the relator fails to allege FCA violations with the requisite particularity required under Rule 9(b)—and indeed the relator does not identify *any* actual claims submitted to any states that are allegedly false—Counts II through XXXIII fail as a matter of law and should be dismissed.

With respect to state-law claims involving Illinois, the relator argues that it does not need to identify specific claims involving private insurers under the Illinois Insurance Claims Fraud

12

Prevention Act ("IIFPA"), 740 Ill. Comp. Stat. 92, and that the IIFPA "only requires pleading the same elements as the FCA." Rel. Opp. at 20 (citing *United States ex rel. Zverev v. United States Vein Clinics of Chi., LLC*, 244 F. Supp. 3d 737, 743 (N.D. Ill. 2017)). But in the amended complaint, the relator alleges, citing Counts XXXII and XXXIII, that it seeks "to recover for fraudulent claims submitted to *commercial* insurance companies in those states." Am. Compl. ¶ 248 (emphasis in original). And in Count XXXIII, the relator alleges that MD Labs & Owners violated the IICFPA based upon a "policy of insurance issued by an insurance company." *Id.* ¶ 544. Accordingly, Counts II through and XXXIII must be dismissed for failure to state a claim pursuant to Rules 12(b)(6) and 9(b).

**IV.     The Court Should Deny The Relator's Request, In The Alternative, For Leave To File A Second Amended Complaint**

In the alternative, the relator requests that the Court grant it leave to file a second amended complaint. Rel. Opp. at 20. But the relator fails to offer any reasons why such leave to amend is appropriate. Nor does the relator identify any changes it is prepared to make in any such amended pleading. The relator's request thus lacks merit and should be denied. It is unable to cure the deficiencies in its amended complaint and amending yet again would be futile. Fed. R. Civ. P. 15(a)(2); *Kelly*, 827 F.3d at 15 (district court properly dismissed FCA claims with prejudice and did not abuse its discretion when denying the relator's motion to amend).

## CONCLUSION

For these reasons, MD Labs & Owners respectfully request that the Court grant this motion and enter an order dismissing the relator's amended complaint with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | By: s/Alexander O. Canizares |
| July 1, 2022 | Alexander O. Canizares (admitted *pro hac vice*)<br>ACanizares@perkinscoie.com<br>Barak Cohen (admitted *pro hac vice*)<br>BCohen@perkinscoie.com<br>Matthew J. Moffa (BBO # 681965)<br>MMoffa@perkinscoie.com<br>PERKINS COIE LLP<br>700 Thirteenth Street, N.W., Suite 800<br>Washington, D.C. 20005-3960<br>Telephone:    202.654.6200<br>Facsimile:    202.654.6211<br><br>*Attorneys for Defendants MD Spine Solutions LLC, d/b/a MD Labs Inc., Denis Grizelj, and Matthew Rutledge* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated:  July 1, 2022

s/ Alexander O. Canizares
Alexander O. Canizares
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone:  202.654.6200
Facsimile:  202.654.6211