# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA, *et al., ex rel.*
OMNI HEALTHCARE, INC.,

        Plaintiffs,

v.

MD SPINE SOLUTIONS LLC, D/B/A MD LABS
INC., DENIS GRIZELJ, MATTHEW
RUTLEDGE AND DOE HEALTHCARE
PROVIDERS 1 - 100,

        Defendants.

Case No. 18-cv-12558-PBS

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

    A.    The Relator............................................................................................................. 2

    B.    The Original Complaint and the Settlement with the United States ..................... 2

    C.    The Stipulations of Dismissal and the Amended Complaint ................................ 4

    D.    The Second Amended Complaint .......................................................................... 5

ARGUMENT ....................................................................................................................... 6

    A.    Legal Standard ....................................................................................................... 6

    B.    Relator's Claim Pursuant to EKRA Must Be Dismissed Because There Is No Private Right of Action Under EKRA ........................................................... 7

    C.    Relator's Claim Pursuant to EKRA Must Also Be Dismissed To the Extent It Relies On Conduct Occurring Before EKRA's Effective Date ............. 8

    D.    Relator's Claim Pursuant to the AKS Must Be Dismissed Because There Is No Private Right of Action Under the AKS ..................................................... 9

    E.    Relator Fails to State a Claim Under the False Claims Act With Respect to Allegations Regarding Contracts for Specimen Collection ................................ 10

            1.    Relator Fails to Plausibly Allege That the Contracts for Specimen Collection Violate the AKS ................................................... 11

            2.    Relator Fails to Allege With Particularity That the Contracts for Specimen Collection Violate EKRA ...................................... 13

    F.    Relator Fails to State a Claim Under the False Claims Act With Respect to MD Labs' Alleged Use of Diagnosis Codes ..................................................... 13

    G.    Relator Fails to State a Claim Under the False Claims Act With Respect to New Allegations Relating to Non-UTI Testing ................................................. 16

CONCLUSION ................................................................................................................... 17

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)...........................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................6, 7, 13, 15

*Buntin v. City of Boston*,
   857 F.3d 69 (1st Cir. 2017)................................................................................8

*United States ex rel. Clausen v. Lab Corp. of Am., Inc.*,
   290 F.3d 1301 (11th Cir. 2002), cert. denied, 537 U.S. 1105 (2003)....................14

*Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*,
   228 F.3d 24 (1st Cir. 2000)...............................................................................11

*United States ex rel. Davis v. Prince*,
   2010 WL 2679761 (E.D. Va. July 2, 2010) ......................................................9, 16

*United States ex rel. Dolan v. Long Grove Manor, Inc.*,
   2014 WL 3583980 ..........................................................................................15

*Frith v. Whole Foods Mkt., Inc.*,
   38 F.4th 263 (1st Cir. 2022)...........................................................................6, 15

*Gaalla v. Citizens Med. Ctr.*,
   No. CIV.A. V-10-14, 2010 WL 2671705 (S.D. Tex. June 30, 2010)....................10

*United States ex rel. Ge v. Takeda Pharm. Co.*,
   737 F.3d 116 (1st Cir. 2013)...........................................................................7, 13

*United States ex rel. John Doe v. Health First, Inc.*,
   No. 6:14-cv-00501 (M.D. Fla. 2014) ....................................................................2

*United States ex. rel. Kelly v. Novartis Pharms. Corp.*,
   827 F.3d 5 (1st Cir. 2016)..................................................................................7

*Kun v. KinderCare Educ. LLC*,
   258 F. Supp. 3d 221 (D. Mass. 2017) ..............................................................9, 16

*Landgraf v. USI Film Prod.*,
   511 U.S. 244 (1994)..........................................................................................8

*Morales Posada v. Cultural Care, Inc.*,
   554 F. Supp. 3d 309 (D. Mass. 2021), aff'd on other grounds sub nom. *Posada v. Cultural Care, Inc.*, 66 F.4th 348 (1st Cir. 2023) .............................................................9, 16

*United States ex rel. Omni Healthcare, Inc. v. Amerisourcebergen, et al.*,
   No. 1:12-cv-01178 (E.D.N.Y. 2012) ................................................................................2

*United States ex rel. Omni Healthcare, Inc. v. Health First, Inc., et al.*,
   No. 6:19-cv-02237 (M.D. Fla. 2019) ...............................................................................2

*United States ex rel. Omni Healthcare, Inc. v. McKesson Corp., et al.*,
   No. 1:12-cv-0644 (E.D.N.Y. 2012) ..................................................................................2

*United States ex rel. Omni Healthcare, Inc. v. Millennium Lab'ys., Inc.*,
   No. 1:14-cv-13052 (D. Mass. 2014) .................................................................................2

*United States ex rel. Omni Healthcare, Inc. v. U.S. Lab'y and Radiology, Inc., et al.*,
   No. 8:13-cv-1937 (M.D. Fla. 2013) ..................................................................................2

*United States ex rel. Omni Healthcare, Inc. v. U.S. Oncology, Inc.*,
   No. 1:19-cv-05125 (E.D.N.Y. 2019) ................................................................................2

*Reade v. Galvin*,
   No. CV 21-10064-FDS, 2021 WL 327474 (D. Mass. Feb. 1, 2021) ...............................8, 10

*United States ex rel. Scalamogna v. Steel Valley Ambulance*,
   2018 WL 3122391 (W.D. Pa. Jun. 26, 2018) ..................................................................15

*United States v. Adventist Health*,
   No. 17-CV-00613-AWI-SKO, 2020 WL 2522114 (E.D. Cal. May 18, 2020).....................10

*Lawton ex rel. United States v. Takeda Pharm. Co., Ltd.*,
   842 F.3d 125 (1st Cir. 2016) ............................................................................................7

*United States ex rel. Wollman v. Gen. Hosp. Corp.*,
   394 F. Supp. 3d 174 (D. Mass. 2019) .............................................................................14

**Statutes**

18 U.S.C. § 220................................................................................................................8

18 U.S.C. § 220(a) ...........................................................................................................7

31 U.S.C. § 1729(a)(1)(A), (B), (C) ................................................................................10

42 U.S.C. § 1320a-7b(b) ..............................................................................................9, 10

**Other Authorities**

Rule 9(b) ...................................................................................................................1, 2, 7, 13, 14, 15

Rule 12(b)(6)......................................................................................................................1, 6, 11

Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), Defendants MD Spine Solutions LLC, d/b/a MD Labs Inc. ("MD Labs"), Denis Grizelj, and Matthew Rutledge (collectively, "Defendants[1]") move to dismiss the new claims asserted by Omni Healthcare Inc. ("Relator") in its Second Amended Complaint (the "SAC") for failure to state a claim upon which relief may be granted. Because the Relator's complaint fails to plausibly state its new allegations with particularity, this motion should be granted, and the Relator's new allegations and causes of action should be dismissed with prejudice.

## <u>INTRODUCTION</u>

The SAC's two new causes action under the Anti-Kickback Statute ("AKS") and the Eliminating Kickbacks in Recovery Act ("EKRA") fail as a matter of law because neither the AKS nor EKRA authorize civil suits by a private relator. In fact, the AKS and EKRA are criminal statutes and do not authorize civil enforcement. Additionally, Relator's EKRA claim is based in part on an agreement that concluded in 2017, a year before EKRA took effect in October 24, 2018.

Furthermore, Relator's False Claims Act claim fails as a matter of law insofar as it seeks to incorporate these new allegations that MD Labs compensated companies providing direct marketing services for collecting specimens on which testing would be performed, and that MD Labs maintained a policy of not balance billing patients. Relator's sole basis for alleging that the specimen collection agreement violated the AKS is an inapposite advisory opinion issued by HHS-OIG concerning a different type of agreement, and is noncontrolling because it applies only to the entity requesting the opinion. The advisory opinion does not establish that the agreements

---

[1] Although Relator has included 100 unnamed "Doe Healthcare Providers" as defendants, the named defendants are referred to herein as "Defendants" for ease of reference.

alleged by Relator violated the AKS, and Relator does not otherwise allege how the agreements transgressed the AKS or the FCA.

Finally, Relator's new claims concerning MD Labs' alleged misuse of diagnosis codes should be dismissed because the SAC fails to plausibly state these new allegations with particularity, as required by Rule 9(b).

For these reasons and the reasons further set forth herein, Relator's new causes of action asserted in the SAC must be dismissed. Furthermore, the FCA claim must be dismissed to the extent it is based on the new allegations regarding the specimen collection agreements.

## BACKGROUND

### A.    The Relator

Relator is a medical physician group based in Brevard county, Florida. (SAC ¶ 28). Not coincidentally, Relator is a repeat filer of *qui tam* actions around the country. In recent years, it has filed at least seven *qui tam* complaints against companies in the health care industry alleging fraud of one kind or another in pursuit of a share of any putative recovery to the government under the FCA's *qui tam* provisions.[2]

### B.    The Original Complaint and the Settlement with the United States

Relator filed its original complaint in this action under seal in December 2018. (ECF No. 1). Following the U.S. Department of Justice's investigation of the allegations therein, the United States, Defendants, and Relator entered into a settlement resolving certain allegations in the

---

[2] *See, e.g., United States ex rel. Omni Healthcare, Inc. v. Amerisourcebergen, et al.,* No. 1:12-cv-01178 (E.D.N.Y. 2012); *United States ex rel. Omni Healthcare, Inc. v. McKesson Corp., et al.,* No. 1:12-cv-0644 (E.D.N.Y. 2012); *United States ex rel. Omni Healthcare, Inc. v. U.S. Lab'y and Radiology, Inc., et al.,* No. 8:13-cv-1937 (M.D. Fla. 2013); *United States ex rel. Omni Healthcare, Inc. v. Millennium Lab'ys., Inc.,* No. 1:14-cv-13052 (D. Mass. 2014); *United States ex rel. John Doe v. Health First, Inc.,* No. 6:14-cv-00501 (M.D. Fla. 2014) *United States ex rel. Omni Healthcare, Inc. v. U.S. Oncology, Inc.,* No. 1:19-cv-05125 (E.D.N.Y. 2019); *United States ex rel. Omni Healthcare, Inc. v. Health First, Inc., et al.,* No. 6:19-cv-02237 (M.D. Fla. 2019); *United States ex re. Omni Healthcare, Inc. v. McKesson Corp., et al.,* No. 0:20-cv-01196-NEB-DJF (D. Minn. 2020).

original complaint, which was reduced to writing in a Settlement Agreement on October 20, 2021. (ECF No. 85-1). That same day, the United States filed under seal a notice of its decision to intervene in part of this action, solely for purposes of settlement, concerning allegations regarding urine drug testing services. (ECF No. 45 at 1l; *see also* ECF No. 47 (order unsealing complaint and intervention notice)).

The settlement released Defendants for "any and all civil or administrative monetary claims the United States has for the Covered Conduct under the False Claims Act . . . the Civil Monetary Penalties Law . . . the Program Fraud Civil Remedies Act . . . or the common law theories of payment by mistake, unjust enrichment, and fraud." (*Id*. ¶¶ G, 4).  Certain enumerated categories of claims (such as claims under the Internal Revenue Code, criminal claims, certain administrative claims, and claims for conduct other than the Covered Conduct) were carved out from the United States' release and were retained by the United States. (*Id*. ¶ 7).

Relator provided an even broader release of Defendants "from any and all claims and potential claims, including but not limited to all claims included in the qui tam complaint filed in [this action], any other claims the Relator has on behalf of the United States under the False Claims Act . . . and any common law claims" except for certain reserved claims. (ECF No. 85-1 ¶ 5). The only set of claims retained by the Relator was "claims based on [Defendants'] submission or causing the submission of false claims for urinary tract infection testing, subject to any applicable defenses [Defendants] otherwise retain (the 'Non-Released UTI Claims')." (*Id*. ¶ 5). Accordingly, the Relator released Defendants "from any liability to Relator arising from the filing of [this action], except as to liability arising out of the Non-Released UTI Claims." (*Id*. ¶ 9).

###### C.        **The Stipulations of Dismissal and the Amended Complaint**

The United States filed a Notice of Intervention in Part for Settlement Purposes on October 20, 2021. (ECF No. 45). On January 28, 2022, the United States filed a Stipulation of Dismissal. (ECF No. 52). The parties filed the Joint Stipulation of Dismissal on February 2, 2022. (ECF No. 63).

On April 4, 2002, Relator filed an Amended Complaint (the "Amended Complaint") (ECF No. 71). The Amended Complaint alleged that Defendants violated the False Claims Act (the "FCA") and various state analogs of the FCA. (*Id*. ¶¶ 251-546). Relator alleged that Defendants engaged in a scheme resulting in the submission of thousands of fraudulent claims to payors (including Medicare and other government healthcare programs). (*Id*. ¶¶ 2, 19, 99). The portions of the Amended Complaint addressing UTI testing alleged that, after performing an initial bacterial urine culture ("BUC") test, Defendants performed additionally, medically unnecessary testing (*Id*. ¶¶ 10-14). Relator contended that after performing a BUC test, MD Labs performed "sophisticated identification tests using polymerase chain reaction ('PCR') technology."[3] (*Id*. ¶¶ 11, 159, 219). Relator alleged that the PCR tests are not "clinically useful," are unreasonably expensive, and are investigational. (*Id*. ¶¶ 13, 219, 223, 227). Relator also asserted that the PCR tests were referred to MD Labs as a result of kickbacks and that Defendants violated (or caused Relator to violate) Medicare rules in billing for the tests. (*Id*. ¶¶ 184-85). Additionally, Relator made allegations regarding pharmacogenetic and UDT testing,

---

[3] Relator's allegation demonstrates its lack of understanding of MD Labs' basic laboratory workflow in place for this life-saving diagnostic test. After discovery, Defendants intend to present a factual record showing that Relator's allegation that MD Labs performed a BUC followed by PCR testing is incorrect. Contrary to Relator's allegations, MD Labs started a culture simultaneously with performing a PCR test as part of a separate laboratory pathway so antimicrobial susceptibility testing could be performed promptly on any pathogens found by the PCR test. This pathway was intended to expedite the referring provider's ability to select appropriate antimicrobial therapy. MD Labs did not employ BUC testing as part of its pathogen identification process.

which are separate and distinct from UTI testing and are outside the narrow category of claims that Relator retained following its settlement.  (*Id.* ¶¶ 16, 97, 184, 200-01; *see* ECF No. 85-1).

### D.  The Second Amended Complaint

Relator filed the SAC on May 28, 2023, after receiving leave of Court. (ECF No. 184). The SAC adds allegations regarding MD Labs' contracts with certain sales representatives and billing practices. It alleges that MD Labs entered into two service agreements with marketing companies in which MD Labs agreed to compensate the marketing companies for collecting specimens. (*Id.* ¶ 266). One of the alleged agreements, between MD Labs and Pace Solutions, LLC ("Pace Solutions"), was in effect for 2017. (*Id.* ¶¶ 268-69). Under this agreement, Pace Solutions allegedly provided direct marketing, sales, and specimen collection services. (*Id.* ¶¶ 270-71). MD Labs allegedly agreed to pay Pace Solutions "$18 per each insured specimen" but did not agree to pay "any amount for specimens collected without insurance." (*Id.* ¶ 272). The other service agreement now alleged in the SAC, between MD Labs and KDB Consulting, was in effect from May 22, 2019 through December 31, 2019. (*Id.* ¶¶ 274-76). Relator alleges that MD Labs agreed to "pay KDB Consulting 25 percent commission for customer accounts assigned to KDB Consulting up to $500,000 revenue in any month and 30 percent commission paid for customer accounts to KDB Consulting in any month where revenue exceeds $500,000." (*Id.* ¶ 277).

Relator also adds two new allegations regarding MD Labs' billing practices. The SAC alleges that MD Labs "routinely did not balance bill patients" (i.e., did not charge patients for the "difference between the provider's charge and the allowed amount" paid by insurance). (*Id.* ¶¶ 280, 286). Relator contends that this practice "is a violation of the Anti-Kickback Statute." (*Id.* ¶ 289). The SAC also alleges that MD Labs submitted claim paperwork to government health care programs listing diagnosis codes that were different from the codes indicated by providers in the

requisition paperwork submitted to MD Labs. (*Id*. ¶¶ 290-99). The SAC alleges one instance where MD Labs submitted a claim form with a diagnosis code that was different than the diagnosis code indicated by the ordering provider and one instance where MD Labs MD Labs submitted a claim form with a diagnosis code where the ordering provider did not include a diagnosis code on the requisition paperwork. (*Id*. ¶¶ 295-96).

The SAC adds two new causes of action. The first cause of action is for violation of the AKS based on the agreements providing for payments for collecting specimens and MD Labs' alleged failure to balance bill patients. (*Id*. ¶¶ 596-604). The second new cause of action is for violations of EKRA based on the agreements providing for payments for collecting specimens. (*Id*. ¶¶ 605-09).

## <u>ARGUMENT</u>

### A.   <u>Legal Standard</u>

A motion to dismiss pursuant to Rule 12(b)(6) must be granted if the complaint does not contain allegations "plausibly suggesting (not merely consistent with)" an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The factual allegations in the complaint must "possess enough heft to show that the pleader is entitled to relief." *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 269 (1st Cir. 2022) (citation omitted). A complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Frith*, 38 F.4th at 269 (quoting *Twombly*, 550 U.S. at 555). "For example, wholly conclusory claims will not suffice where the defendant's alleged conduct is merely consistent with unlawful action and is just as much in line with lawful action." *Id.* at 269 (internal citation and quotation omitted). A plaintiff must plead "more than labels and conclusions;" a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545, 555.

In addition to satisfying the *Twombly* standard, claims alleging violations of the FCA must satisfy the heightened pleading standards under Rule 9(b), which provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Lawton ex rel. United States v. Takeda Pharm. Co., Ltd.*, 842 F.3d 125, 130 (1st Cir. 2016). To meet this exacting standard, Relator must "specify the time, place, and content of an alleged false representation." *United States ex. rel. Kelly v. Novartis Pharms. Corp.*, 827 F.3d 5, 13 (1st Cir. 2016) (internal quotations omitted). Relators must also "set forth with particularity the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 123 (1st Cir. 2013). Conclusory references to plans and schemes are not sufficient. *Kelly*, 827 F.3d at 13 (internal quotations omitted).

### B.    Relator's Claim Pursuant to EKRA Must Be Dismissed Because There Is No Private Right of Action Under EKRA

In the SAC, Relator for the first time asserts a cause of action under EKRA, 18 U.S.C. § 220(a). (SAC ¶¶ 605-09). EKRA is a criminal statute that prohibits "(1) solicit[ing] or receiv[ing] any remuneration (including any kickback, bribe, or rebate) . . . in return for referring a patient or patronage to a recovery home, clinical treatment facility, or laboratory; or (2) pay[ing] or offer[ing] any remuneration including any kickback, bribe, or rebate) . . . to induce a referral of an individual to a recovery home, clinical treatment facility, or laboratory; or . . . in exchange for an individual using the services of that recovery home, clinical treatment facility, or laboratory." 18 U.S.C. § 220(a). As a *criminal* statute, the only remedies set forth in the statute for violations are *criminal* fines. *See id.* (providing that persons violating EKRA "shall be fined not more than $200,000, imprisoned not more than 10 years, or both, for each occurrence").

EKRA does not provide for enforcement by private civil suits. The absence of statutory language authorizing such a remedy is fatal to Relator's EKRA claim. "Because 'private rights

of action to enforce federal law must be created by Congress[,] [t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.'" *Buntin v. City of Boston*, 857 F.3d 69, 74 (1st Cir. 2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)). Where Congress has "established its own remedial scheme . . . federal courts should not exercise their limited power to imply or create additional remedies." *Id.* at 75 (internal quotations and citations omitted). Accordingly, where statutes provide for criminal enforcement but no other remedies, courts decline to read a private right of action into the statute. *See Reade v. Galvin*, No. CV 21-10064-FDS, 2021 WL 327474, at *2 (D. Mass. Feb. 1, 2021) (collecting cases declining to find a private right of action in criminal statutes). The same holdings apply to EKRA. EKRA provides for criminal remedies only; nothing in its text authorizes private civil enforcement.[4] Thus, Relator's claim under EKRA (Count XXXV) must be dismissed in its entirety.

**C.   Relator's Claim Pursuant to EKRA Must Also Be Dismissed To the Extent It Relies On Conduct Occurring Before EKRA's Effective Date**

Relator's EKRA claim must also be dismissed to the extent that Relator seeks to establish liability for conduct occurring prior to EKRA becoming effective. Courts may not interpret a statute to apply retroactively absent "clear congressional intent favoring such a result." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994). "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Id.* at 257. EKRA took effect on October 24, 2018. 18 U.S.C. § 220. Neither the EKRA statute nor the public law enacting it contain any language indicating that EKRA operates retroactively. Yet by Relator's admission, one of the two instances where MD

---

[4] There is no reported case in which a plaintiff has even attempted to bring a private cause of action directly under EKRA.

Labs entered into an agreement that Relator alleges violated EKRA concluded on December 31, 2017, over nine months prior to the enactment of EKRA. (SAC ¶ 269) (alleged agreement between MD Labs and Pace Solutions, LLC ran from January 1, 2017 to December 31, 2017). To the extent that Relator's EKRA claim relies on the Pace Solutions, LLC contract, or any other conduct before October 24, 2018, it must be dismissed. *See*, *e.g.*, *Morales Posada v. Cultural Care, Inc.*, 554 F. Supp. 3d 309, 323-24 (D. Mass. 2021), *aff'd on other grounds sub nom. Posada v. Cultural Care, Inc.*, 66 F.4th 348 (1st Cir. 2023) (dismissing count of complaint alleging deceptive practices only to extent it relied on Connecticut and Washington law); *Kun v. KinderCare Educ. LLC*, 258 F. Supp. 3d 221, 226-27 (D. Mass. 2017) (dismissing count alleging wrongful termination except to extent in relied on allegations that termination was due to plaintiff's conducting a review regarding child abuse allegations required by state law); *United States ex rel. Davis v. Prince*, 2010 WL 2679761, at *4 (E.D. Va. July 2, 2010) (dismissing count as to certain theories but not others).

> **D.     Relator's Claim Pursuant to the AKS Must Be Dismissed Because There Is No Private Right of Action Under the AKS**

In the SAC, Relator for the first time asserts a cause of action directly under the AKS, 42 U.S.C. § 1320a-7b(b). (SAC ¶¶ 596-604). This claim, like the one brought under EKRA, fails for lack of a private cause of action. (*See* Part B, *supra*). Like EKRA, the AKS is a *criminal* statute. It prohibits "knowingly or willfully solicit[ing] or receiv[ing] any remuneration (including and kickback, bribe, or rebate) . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program" or "in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service or item for which payment may be made in whole or in part under a Federal health care program."

42 U.S.C. § 1320a-7b(b). A person violating these prohibitions "shall be guilty of a felony and . . . shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both. *Id.* Because the AKS is a *criminal* statute without any provision for private civil enforcement, there is no private cause of action under the statute. *See Reade*, 2021 WL 327474, at *2.

Accordingly, courts have consistently dismissed claims brought directly under the AKS for lack of a private right of action. *See United States v. Adventist Health*, No. 17-CV-00613-AWI-SKO, 2020 WL 2522114, at *10 (E.D. Cal. May 18, 2020) (dismissing claims under Anti-Kickback Statute for lack of private right of action); *Gaalla v. Citizens Med. Ctr.*, No. CIV.A. V-10-14, 2010 WL 2671705, at *3 (S.D. Tex. June 30, 2010) (collecting cases rejecting private right of action under the AKS). Relator's attempt to bring a cause of action directly under the AKS fails as a matter of law. Thus, Relator's claim under the AKS (Count XXXIV) must be dismissed in its entirety.

### E.  Relator Fails to State a Claim Under the False Claims Act With Respect to Allegations Regarding Contracts for Specimen Collection

To the extent that Relator now seeks to bolster its FCA claim with new allegations regarding MD Labs' alleged payments for specimen collection services, that claim must be dismissed to the extent it relies on such allegations. To state a claim under the FCA, a relator must allege that a defendant presented, or caused to be presented, "false or fraudulent claim[s] for payment or approval to the federal government," that a defendant made, used, or caused to be made or used, "a false record or statement material to a false or fraudulent claim," or that a defendant conspired to commit violations of the FCA. 31 U.S.C. § 1729(a)(1)(A), (B), (C). Relator has not met that burden here.

1.     *Relator Fails to Plausibly Allege That the Contracts for Specimen Collection Violate the AKS*

The only facts that Relator alleges supporting its contention that claims resulting from MD Labs' alleged payments to third parties for specimen collection violated the FCA are that the arrangements violate the AKS and EKRA. (SAC ¶¶ 260-67). In support of its allegation of an AKS violation, Relator relies entirely on allegations that the specimen collection arrangements are similar to an arrangement that HHS-OIG concluded in Advisory Opinion 22-09 violated the AKS. (*Id*. ¶¶ 260-66). However, an advisory opinion is not binding and do not have any precedential effect on any party other than the party requesting the opinion.  (*See* Medicare and State Health Care Programs: Fraud and Abuse; Issuance of Advisory Opinions by the OIG, 62 FR 7350-01 ("advisory opinions are binding upon and may legally be relied upon only by the requestor(s)).  By its terms, Advisory Opinion 22-09 does not apply to any arrangement other than the arrangement proposed by the Requestor in seeking the opinion. The opinion is "limited to the relevant facts presented . . . by Requestor" and "may not be relied on by any person other than Requestor." (Advisory Opinion 22-09 at 2).  It is "limited in scope to the Proposed Arrangement and has no applicability to any other arrangements" and "has no application to, and cannot be relied upon by, any other person." (*Id*. at 5-6).  As such, Relator's reliance on an advisory opinion for support that the alleged arrangements violated the law is misplaced, and it is insufficient to establish an FCA violation regarding alleged payments for specimen collection.

Moreover, the alleged agreements for specimen collection are materially different from the arrangement considered in Advisory Opinion 22-09.[5]  The Requestor of Advisory Opinion

_____

[5] The Court may consider the contents of Advisory Opinion 22-09 in deciding this motion pursuant to Rule 12(b)(6) because it is "integral to or explicitly relied on in the complaint, even though not attached to the complaint." *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

22-09 was an operator of clinical laboratories that contracted with hospitals to collect, process, and handle specimens that would be sent to the Requestor for testing in exchange for payment on a per-patient-encounter basis. (*Id*.) The payments would be made only for patients who presented with orders for testing, but who were not inpatients or registered outpatients of the hospitals. (*Id*.) HHS-OIG concluded that the specific proposed arrangement would violate the AKS because it involved "remuneration from a laboratory to a party that is in a position to make referrals to the laboratory. (*Id*. at 4). Specifically, HHS-OIG concluded that if a patient presented to the hospital with a laboratory order that did not specify the testing laboratory, the hospital could "refer specimens from that individual to Requestor for reimbursable testing." (*Id*.) HHS-OIG further concluded that because of the per-patient-encounter fees, the hospitals would have an incentive to refer such patients to Requestor. (*Id*.)

However, the MD Labs agreements regarding specimen collection alleged in the SAC are materially different from the proposed arrangement at issue in Advisory Opinion 22-09. The alleged MD Labs specimen collection agreements involved alleged payments to ***marketing companies*** for specimen collection. (SAC ¶¶ 266, 270-72, 276-77). Advisory Opinion 22-09 involved proposed payments to hospitals. Unlike hospitals, marketing companies do not make treatment decisions and do not submit orders for laboratory testing. Thus, the concern underlying Advisory Opinion 22-09—that payments to hospitals will induce them to steer tests to a specific laboratory—is not present with respect to the alleged MD Labs agreements because no payments thereunder went to a provider.  Relator does not allege that MD Labs made any such payments for the purpose of inducing referrals. For these reasons, Relator's allegations concerning Advisory Opinion 22-09 are insufficient to state a claim that the alleged specimen collection arrangements violated the FCA.

2.     *Relator Fails to Allege With Particularity That the Contracts for Specimen Collection Violate EKRA.*

Relator also alleges that the proposed MD Labs agreements regarding specimen collection violated EKRA. (SAC ¶ 267). Yet, Relator pleads no facts alleging ***how*** the agreements failed to satisfy the requirements of EKRA. Rather, Relator merely recites the elements of EKRA and alleges in a conclusory fashion that the specimen collection agreements violated EKRA.[6] (SAC ¶¶ 605-07). This is insufficient to meet Relator's pleading burden. *Twombly*, 550 U.S. at 545, 555. To state a claim for an FCA violation and satisfy Rule 9(b), Relator must "set forth with particularity the 'who, what, when, where, and how' of the alleged fraud." *Ge*, 737 F.3d at 123. In other words, Relator must allege with particularity how the elements of an FCA claim are satisfied.  Its conclusory allegations are insufficient to state a claim.

**F.     Relator Fails to State a Claim Under the False Claims Act With Respect to MD Labs' Alleged Use of Diagnosis Codes**

To the extent that Relator now seeks to base its FCA claim on its new allegations regarding MD Labs' alleged submission of claim forms with diagnosis codes that were different than those included on requisition paperwork from providers, these allegations also fail to state a claim under the FCA. Relator's allegations in the SAC regarding the use of diagnosis codes fall far short of pleading with particularity the "who, what, when, where, and how" of the alleged fraud, as required by Rule 9(b). *See Ge*, 737 F.3d at 123.  Relator's only factual allegations in support of this theory liability are two claim forms that MD Labs allegedly submitted on December 12, 2018. (SAC ¶¶ 295-96). Relator alleges that for one of these claim forms, the

---

[6] To the extent Relator relies on Advisory Opinion 22-09 to allege an EKRA violation, in addition to the deficiencies already discussed, that opinion does not address EKRA. (Advisory Opinion 22-09 at 1) (listing statutes considered in the Advisory Opinion).

diagnosis code was different than the code listed on the requisition form from the provider. (*Id.* at ¶ 295).  Relator alleges that the other claim form included a diagnosis code although the requisition form from the provider did not list any diagnosis code. (*Id.* at  ¶ 296).

These claims are insufficient pursuant to Rule 9(b).  As the First Circuit held in *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, "a relator *must provide details that identify particular false claims* for payment that were submitted to the government." 360 F.3d at 232-33 (quoting *United States ex rel. Clausen v. Lab Corp. of Am., Inc.,* 290 F.3d 1301, 1311 (11th Cir. 2002), *cert. denied,* 537 U.S. 1105 (2003) (emphasis added)); *see also United States ex rel. Wollman v. Gen. Hosp. Corp.,* 394 F. Supp. 3d 174, 187 (D. Mass. 2019) (relator must provide "details that identify *particular* false claims for payment that were submitted to the government" (emphasis added)). The First Circuit elaborated on this particularity requirement:

> In a case such as this, details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity.

*Karvelas,* 360 F.3d at 232-33 (quoting *Claussen,* 290 F.3d at 1311). Generic allegations without such details are insufficient.  Here, Relator does not allege which patients these claim forms pertain to, the content of the bills that were submitted, their identification numbers, the amount of money charged to the government, or how or why the codes on the claim forms differed from the those on the requisition forms. Defendants are left to guess which claims are the subject of Relator's claims.

Instead, Relator alleges that the claims were false merely because the diagnosis codes were different between unidentified requisition forms and claim forms.[7]  The alleged differences in coding are equally consistent with numerous non-fraudulent circumstances as with any fraudulent ones. For example, it could be the case that, where a requisition form was missing a diagnosis code, MD Labs personnel noticed the omission, contacted the ordering provider to obtain it, and then recorded it on the claim form. Likewise, it could be the case that MD Labs, in subsequent communications with the provider, learned that the provider initially supplied an incorrect code on the requisition form, and MD Labs personnel included the correct one subsequently supplied by the provider on the claim form. At later stages of this case, where the Court can look beyond the contours of the SAC, MD Labs will submit evidence showing that such non-fraudulent circumstances explain why the codes "differed" (if they did) on the forms referenced in the SAC. But this claim should not even proceed to that stage because Relator has alleged conduct that is "**merely consistent with unlawful action and is just as much in line with lawful action**." *Frith*, 38 F.4th at 269 (quoting *Twombly*, 550 U.S. at 555) (emphasis added); *see also*. *United States ex rel. Scalamogna v. Steel Valley Ambulance*, 2018 WL 3122391 (W.D. Pa. Jun. 26, 2018) (holding that conclusory assertion that on two occasions defendant falsely certified condition of patients, without any supporting information, was insufficient under Rule 9(b); *United States ex rel. Dolan v. Long Grove Manor, Inc.*, 2014 WL 3583980, at *5-6 (relator did not satisfy Rule 9(b) by alleging that procedures were upcoded and records manipulated where allegations of example claims contained no detail about the information on

---

[7] Significantly, Relator only identifies two claim forms out of the nearly 600 UTI tests Relator ordered from MD Labs that allegedly have a discrepancy in the billing codes. As further discussed below, after discovery, Defendants intend to present a factual record showing that Omni's own patient medical records demonstrate that, where an Omni provider failed to properly provide ICD-10 codes, MD Labs staff requested further information and utilized the additional information supplied by the provider for billing.

which the treatment decisions were made and basis for ordering the therapy). For these reasons, the FCA claim must be dismissed to the extent it is based on the new allegations regarding the use of diagnosis codes. *See, e.g.*, *Morales Posada*, 554 F. Supp. 3d at 323-24 (dismissing count as to certain theories but not others); *Kun*, 258 F. Supp. 3d at 226-27 (same); *Prince*, 2010 WL 2679761, at *4 (same).

G.   **Relator Fails to State a Claim Under the False Claims Act With Respect to New Allegations Relating to Non-UTI Testing**

To the extent that Relator relies on the new theories alleged in the SAC in support of its previously-pled FCA claim, the claim must be dismissed to the extent that it concerns testing other than UTI testing. As noted above, Relator released Defendants from any and all claims under the FCA except for those claims for UTI testing.  (ECF No. 85-1 ¶ 5).  However, the new theories pleaded in the SAC sweep more broadly than UTI claims. The allegations regarding agreements providing for payments for specimen collection do not specify what types of testing were performed on the specimens collected pursuant to the alleged agreements, nor whether Defendants intended for UTI tests to be performed pursuant to the agreements. (SAC ¶¶ 268-78). Rather, the allegations refer to "specimens" generally. Similarly, Relator's allegations regarding MD Labs' alleged failure to balance bill does not specify the services for which MD Labs allegedly failed to balance bill patients. (*Id.* ¶¶ 279-89). Furthermore, the new allegations regarding alleged misuse of diagnosis codes are not limited to claims submitted for UTI testing. While the two examples recited in the Complaint allegedly involved the use of a UTI-related diagnosis code, (*id.* ¶¶ 295-96), the claims in the SAC are not limited only those two specific allegations. (*See id.* ¶ 299) (alleging use of false diagnosis codes generally). Because Relator has released all claims other than those relating to UTI testing, to the extent Relators seeks to assert an FCA claim for other types of testing under these new theories, the claim must be dismissed.

## **CONCLUSION**

For the reasons set forth herein, MD Labs and owners respectfully request that the Court

grant this motion to dismiss.

Dated: June 12, 2023

Respectfully submitted,

MD SPINE SOLUTIONS LLC, D/B/A MD
LABS INC., DENIS GRIZELJ AND
MATTHEW RUTLEDGE

By their attorneys,

*/s/ Seth B. Orkand*

Seth B. Orkand (BBO #669810)
Julianna M. Charpentier (BBO #703284)
ROBINSON & COLE LLP
One Boston Place, 25th Floor
Boston, Massachusetts 02108
Tel: (617) 557-5915
Fax: (617) 557-5999
sorkand@rc.com
jcharpentier@rc.com

Edward J. Heath (admitted *pro hac vice*)
Kevin P. Daly (BBO #676633)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel: (860) 275-8200
Fax: (860) 275-8299
eheath@rc.com
kdaly@rc.com

Danielle H. Tangorre (admitted *pro hac vice*)
ROBINSON & COLE LLP
Chrysler East Building
666 Third Avenue, 20th Fl.
New York, NY 10017
Tel: (212) 451-2900
Fax: (212) 451-2999
dtangorre@rc.com

## CERTIFICATE OF SERVICE

I, Seth B. Orkand, certify that a copy of the foregoing document was sent to the following counsel of record for Plaintiff Omni Healthcare, Inc. by ECF on this 12th day of June, 2023.

Scott M. Heidorn, Esq.
BERGSTRESSER & POLLOCK PC
52 Temple Place
Boston, MA 02111
scott@bergstresser.com

Thomas M. Kenny, Esq.
SPIRO HARRISON & NELSON
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
tkenny@spiroharrison.com