UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, *ex rel.* OMNI HEALTHCARE, INC. <br><br>     Plaintiffs, <br><br> v. <br><br> MD SPINE SOLUTIONS LLC D/B/A MD LABS INC., DENIS GRIZELJ, MATTHEW RUTLEDGE AND DOE HEALTHCARE PROVIDERS 1-100, <br><br>     Defendants. | No. 18-cv-12558-PBS |

**MEMORANDUM AND ORDER ON RELATOR'S MOTION TO COMPEL**

CABELL, U.S.M.J.

## I.   INTRODUCTION

In this longstanding *qui tam* litigation, plaintiff-relator Omni Healthcare, Inc. ("Omni") is suing defendants MD Spine Solutions LLC d/b/a MD Labs Inc. ("MD Labs"), Denis Grizelj, and Matthew Rutledge, as well as numerous unidentified healthcare providers (collectively, "defendants"), on behalf of the United States, 29 individual states, and the District of Columbia. Omni alleges that the defendants violated the False Claims Act, 31 U.S.C. § 3729, and numerous state law analogues by misleading Omni into ordering expensive and medically unnecessary PCR[1] urine tract

---

[1] PCR stands for "polymerase chain reaction," which is a form of DNA testing. (D. 184, Second Amended Complaint, ¶ 11).

infection (UTI) testing for its patients.  The defendants assert that they did not mislead Omni or file any false claims and that their PCR testing is clinically useful.

Currently, Omni seeks an order compelling the defendants to produce certain documents that the defendants are withholding based on asserted attorney-client privilege.[2]  As detailed below, the defendants previously produced these documents to the United States but later clawed them back after learning that the United States had shared them with Omni.  Omni contends that the defendants have waived any privilege, while the defendants argue that they have preserved the privilege.  For the following reasons, the court finds that the defendants have waived the privilege.

## II.  RELEVANT BACKGROUND

The court primarily draws the following facts from the parties' submissions in connection with the motion to compel, with other citations to the docket as appropriate.  *See, e.g.*, *Dimaria v. Concorde Ent., Inc.*, Civil Action No. 12-11139-FDS, 2013 WL 4056213, at *1 n.1 (D. Mass. Aug. 9, 2013).  Unless otherwise noted, the facts are not in dispute.

Omni initiated this action by filing a complaint on December 12, 2018.  (D. 1, Complaint).  That complaint alleged that MD Labs

---

[2]  The defendants assert that some of the documents are protected by both attorney-client privilege and work product protection.  Because none of the following analysis depends on whether one or both of these protections apply, the court will refer to "privilege" throughout for the sake of simplicity.

violated the False Claims Act through its billing practices for multiple varieties of urine testing. (*Id.*). The case remained under seal for nearly three years thereafter while the United States investigated. (D. 4, Motion to Seal; D. 47, Order on Intervention). The United States eventually disclosed the existence of the investigation to the defendants while the matter remained sealed. (D. 31, Application for Partial Lifting of Seal; D. 33, Order Granting Partial Lifting of Seal).

During the investigation, the United States proposed a plan to address the issue of attorney-client privilege in connection with the defendants' production of documents. The parties disagree on the nature of the proposal. Omni asserts that that United States proposed entering an order under Federal Rule of Evidence 502(d)[3], which would have protected the defendants from any potential waiver. (D. 229, Omni's Memorandum in Support, p. 5). The defendants assert that the United States did not propose a Rule 502(d) order, but rather offered to use a "filter team" to screen out the defendants' privileged documents if the defendants agreed that this review process would not "taint" the filter team. (D. 229-3, December 2023 Email Thread). Regardless, it is undisputed that the defendants rejected the proposal. Instead,

---

[3] Rule 502(d) provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court – in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d).

the defendants conducted their own internal privilege review
before producing documents to the United States.  The defendants
also included a cover letter with each production stating that the
defendants did not intend to waive any privilege and reserved the
right to claw back any inadvertently disclosed privileged
materials.  (D. 234-1, Cover Letter Dated December 30, 2020).

On April 6, 2021, the United States informed the defendants
that it had identified 12 potentially privileged documents while
reviewing the defendants' December 30, 2020, production.  More
specifically, an Assistant United States Attorney ("AUSA") first
emailed counsel for the defendants at 12:54 pm to inform the latter
that the former came across four potentially privileged documents
while reviewing the production, identifying each document by Bates
number.  (D. 234-6, April 6, 2021, Email Thread).  Then, fifteen
minutes later, the AUSA emailed defense counsel again, identifying
five more potentially privileged documents.  (*Id.*).  Finally, the
AUSA sent a third email approximately forty minutes later
identifying three more documents.  (*Id.*).

Thereafter, the AUSA and defense counsel spoke by telephone,
during which defense counsel requested an opportunity to review
the identified documents for privilege and claw them back if
appropriate.  (D. 229-3).  The defendants conducted the review and
clawed back the twelve documents that the AUSA had identified as
potentially privileged.  However, at that time, the defendants did

4

not review the rest of the December 30, 2020, production or any other production to see if they had inadvertently produced any other privileged documents.

Of note, the United States and the defendants had, during this time period, been engaged in settlement discussions for months. Ultimately, they reached a settlement by October 20, 2021. (D. 45, Notice of Intervention in Part and Declination in Part). As part of the settlement, the parties stipulated to the dismissal of all claims except for Omni's claims against the defendants based on allegedly unnecessary PCR UTI testing. (D. 52, Stipulation of Dismissal). The United States declined to intervene as to those claims. (D. 45). Although Omni as the relator is the party principally prosecuting the remaining claims, *see* 31 U.S.C. § 3730(c)(3), the United States remains a real party in interest. *See* 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of [the False Claims Act] for the person and for the United States Government. The action shall be brought in the name of the Government."); 31 U.S.C. § 3730(d)(2) (establishing that, when the United States declines to intervene, the relator takes 25 to 30 percent of any settlement or recovery plus fees and costs, with the remainder going to the United States). After the settlement, Omni continued pursuing its remaining claims against the defendants.

In or around late September 2022, the defendants changed counsel.  (D. 124, Notice of Appearance; D. 131, Order Allowing Motions to Withdraw).  On or about October 31, 2022, unbeknownst to the defendants, Omni and the United States entered into a Common Interest Agreement to facilitate the sharing of information and materials between them.  (D. 229-4, Common Interest Agreement).  Around that same time, the United States provided Omni with the documents that the defendants had previously produced to the United States.

The defendants did not learn that the United States had provided their past productions to Omni until November 28, 2023, when Omni used documents from one of those productions as exhibits during a deposition.  One week after this discovery, after reviewing their productions to the United States, the defendants attempted to claw back 639 allegedly privileged documents that they had apparently inadvertently disclosed, totaling 2,887 pages.  Omni objected to the claw back request in general and to the adequacy of the privilege log the defendants provided.  Following a conferral between the parties, the defendants provided an updated privilege log on January 5, 2024, and withdrew their privilege claims for 26 of the documents, leaving a total of 613 allegedly privileged documents subject to the claw back request.

## III. LEGAL STANDARD

Privileged materials are ordinarily not discoverable. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case.") (emphasis added). A party who invokes a privilege to resist discovery "bears the burden of establishing that [the privilege] applies to the communications at issue and that it has not been waived." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003); *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289 (D. Mass. 2000) ("The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived.").

In federal cases such as this one, federal common law governs claims of privilege unless the United States Constitution, a federal statute, or rules prescribed by the Supreme Court provide otherwise.[4] Fed. R. Evid. 501. Disclosure of privileged material in a federal proceeding does not effect a waiver if "(1) the disclosure is inadvertent; (2) the holder of the privilege or

---

[4] "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Although Omni asserts numerous claims against the defendants for alleged violations of various state statutes involving false claims, the parties appear to agree that federal law governs this privilege inquiry.

protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b); *see also* Fed. R. Civ. P. 26(b)(5)(B) ("If information produced in discovery is subject to a claim of privilege . . . , the party making the claim may notify any party that received the information of the claim and the basis for it. . . . The producing party must preserve the information until the claim is resolved.").

## IV. DISCUSSION

As noted above, the defendants bear the burden of demonstrating in the first instance that the materials at issue are privileged. However, notwithstanding its dissatisfaction with the defendants' privilege log,[5] Omni does not argue that these materials are not privileged to begin with, only that the privilege has been waived. Under these circumstances, the court will accept the defendants' assertions that the materials are privileged and move on to considering the parties' arguments as to waiver. *See In re: New England Compounding Pharmacy, Inc.*, MDL No. 13-2419-RWZ, 2016 WL 6883215, at *2 (D. Mass. July 28, 2016) (bypassing issue of whether privilege applies and beginning with waiver issue); *Amgen*, 190 F.R.D. at 291-92 (same).

---

[5] Having reviewed the defendants' revised privilege log, the court finds it to be adequate. Of course, the adequacy of the privilege log does not affect the following waiver analysis.

A.   **At-Issue Waiver**

Omni asserts that the defendants have affirmatively waived any privilege attached to the disputed materials by putting those materials "at issue" in the litigation.  "It is settled law that by placing privileged communications . . . 'at issue' in civil litigation, a party waives any applicable claim of privilege where nondisclosure would cause manifest unfairness to the opposing party."  *Urban v. Fed. Home Loan Mortg. Corp.*, 79 F. Supp. 3d 307, 313 (D. Mass. 2015) (quoting *F.D.I.C. v. R.W. Beck, Inc.*, Civil Action No. 01-11982-RGS, 2004 WL 1474579, at *1 (D. Mass. July 1, 2004)) (alterations in original).  Omni argues that the defendants placed the disputed materials at issue by arguing that the court should dismiss Omni's claims under the Anti-Kickback Statute ("AKS") and Eliminating Kickbacks in Recovery Act ("EKRA") in the Second Amended Complaint because Omni failed to allege sufficient facts to show that the defendants knew their conduct was unlawful.  Omni argues that these very facts are likely in the disputed materials, as the privilege log indicates that some of the documents contain legal advice about payment obligations under the agreements that allegedly violated the AKS and EKRA.

The court's order on the defendants' motion to dismiss the Second Amended Complaint (D. 232), which was docketed shortly after Omni filed this motion, essentially moots this issue.  The court ruled that Omni could not maintain claims under the AKS or EKRA as

a matter of law because both are criminal statutes that do not provide private rights of action.  (D. 232, p. 7).  Because Omni is foreclosed from asserting claims under these statutes, the defendants' knowledge of whether their conduct may have violated these statutes is not at issue in this litigation.

### B.  Implied Waiver

Omni also argues that the defendants' inadvertent production of privileged materials to the United States resulted in an implied waiver of the privilege.  "[I]t is generally accepted that conduct can serve to waive the attorney-client privilege by implication." *In re Keeper of Records*, 348 F.3d at 22.  Such conduct can include the unintentional production of privileged documents. *See Amgen*, 190 F.R.D. at 292-93 (finding implied waiver where counsel unintentionally produced four boxes of documents that had been segregated as privileged).

Of course, not every inadvertent disclosure results in a waiver.  *See* Fed. R. Evid. 502(b).  In determining whether an inadvertent disclosure constitutes a waiver, the court examines five factors: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5)

the overriding interest of fairness and justice."  *Amgen*, 190
F.R.D. at 292.[6]

### 1.  *Reasonableness of Precautions Taken*

In a cover letter for their December 30, 2020 production of
documents to the United States, the defendants described their
process for screening out privileged materials as follows:

> MD Labs conducted its own internal check of the documents
> for terms associated with its lawyers.  Upon information
> and belief, these terms included "Perkins," "Caliendo,"
> "Covington," "Danzis," "Barak," and "privileged."  This
> internal search identified privileged emails from a
> lawyer named "Hanson"; Perkins Coie checked for this
> name among the responsive documents, and ascertained
> whether the emails so identified did, in fact,
> constitute privileged materials.  A privilege log
> recording these emails is enclosed.

(D. 234-1).  The fact that the letter lists the search terms used
"[u]pon information and belief," combined with the specification
that "MD Labs conducted its own internal check" (as opposed to the
subsequent check performed by Perkins Coie) suggests that MD Labs
itself, and not its counsel, conducted the privilege review in the
first instance.  Relying on a party to conduct its own review
without counsel's involvement, at least in part, is hardly a
reasonable precaution.  *Cf. Indus. Commc'ns and Wireless, Inc. v.*

---

[6] Although *Amgen* predates the introduction of Federal Rule of Evidence 502,
courts in this district and elsewhere continue to use the five factors it sets
forth in evaluating asserted implied waivers.  *See, e.g.*, *Kaiser v. Kirchick*,
Civil Action No. 21-10590-MBB, 2022 WL 182375, at *8 (D. Mass. Jan. 20, 2022);
*Santiago v. Lafferty*, Civil Action Nos. 13-12172-IT, 13-12302-IT, 13-12203-IT,
2015 WL 717945, at *6 (D. Mass. Feb. 19, 2015); *Figueras v. P.R. Elec. Power
Auth.*, 250 F.R.D. 94, 97 (D.P.R. 2008).

*Town of Alton, N.H.*, Civil Action No. 07-82-JL, 2008 WL 3498652, at *2 (D.N.H. Aug. 7, 2008) (finding precautions insufficient where senior counsel had an associate conduct privilege review but did not double check associate's work).   Furthermore, the "sheer magnitude of the disclosure" itself suggests that the defendants' precautions were inadequate.  *Amgen*, 190 F.R.D. at 292 (discussing inadvertent disclosure of approximately 3,821 pages of privileged documents within production of over 70,000 pages).

Resisting this conclusion, the defendants point to two backstop provisions that, in their view, buttress the reasonableness of their review process.  First, the defendants mention that the United States "agreed to run confirmatory searches to identify any inadvertently [produced] privileged documents." (D. 234, Defendants' Memorandum in Opposition, p. 10).  It appears that these "confirmatory searches" consisted of the United States using the same search terms that the defendants used in their review to screen out potentially privileged materials.  (*Id.* at p. 2).  It is unclear what additional level of protection this step would add, as one would expect that running the same search terms against the same set of documents on two occasions would by design do no more than yield the same results.  Regardless, it would hardly be reasonable for a privilege holder to rely on its adversary's review to identify any inadvertently disclosed documents and prevent an implied waiver.  As such, the United

States' confirmatory searches do little to help the defendants
here.

The defendants also lean on the claw-back provision that they
included in their production cover letters.  That provision reads:

> MD Labs' production of the enclosed documents is without
> prejudice to any rights, claims, objections or defenses.
> In accordance with Federal Rule of Evidence 502, MD Labs
> does not intend to waive any privilege, work-product
> protection or other right that may exist with respect to
> the produced documents, nor should it be construed as a
> concession that the prior designations were made without
> due diligence.  MD Labs has taken reasonable steps to
> identify and protect privileged communications or work
> product that might be reflected in the produced
> documents and reserves the right to request the return
> of privileged documents or work product that may have
> been inadvertently produced.

(D. 234-1).  According to the defendants, this unilateral
reservation of their right to claw back privileged documents
accounted for any potential inadvertent productions.  This
assertion does not resonate; it strains logic to suggest that a
provision that is meant to ameliorate the impact of an inadvertent
disclosure is a "precaution[] taken to *prevent* inadvertent
disclosure." *Amgen*, 190 F.R.D. at 292 (emphasis added).  In any
case, the defendants' reliance on the claw-back provision is
ultimately insufficient to prevent a waiver given their delay in
invoking the provision, as explained below.

    2.  *Timeliness of Post-Disclosure Actions*

The defendants made multiple productions to the United
States, with the last one occurring on December 30, 2020.  The

United States first alerted the defendants that they may have produced some privileged materials a little over three months later, on April 6, 2021.  At that point, the defendants clawed back the small set of documents that the United States identified, but they did not take any steps to determine if they had inadvertently produced any other privileged documents until November 28, 2023, when Omni used some of those documents in a deposition.  This delay of well over two years and seven months is significant and strongly suggests that the defendants have impliedly waived the privilege.  *See Kaiser v. Kirchick*, Civil Action No. 21-10590-MBB, 2022 WL 182375, at *8 (D. Mass. Jan. 20, 2022) (finding waiver where privilege holder "raised the privilege issue more than two years after most of the documents were disclosed in production"); *Indus. Commc'ns and Wireless*, 2008 WL 3498652, at *3 (finding waiver after 14-week delay); *Santullo v. City of Woburn*, Civil Action No. 07-11478-RWZ, 2008 WL 2778819, at *1 (D. Mass. July 14, 2008) (five months); *Figueras v. P.R. Elec. Power Auth.*, 250 F.R.D. 94, 97-98 (D.P.R. 2008) (one and a half months); *Marrero Hernandez v. Esso Standard Oil Co.*, Civil Action No. 03-1485 (JAG/GAG), 2006 WL 1967364, at *4 (D.P.R. July 11, 2016) (three to four months); *Amgen*, 190 F.R.D. at 292 (five days).

The defendants argue that this two-plus-year delay is misleading for multiple reasons.  First, they argue that they acted promptly in moving to claw back the documents within five business

days of November 28, 2023, when they learned that Omni had the
documents.  That brief delay may have been reasonable, *contra
Marrero Hernandez*, 2006 WL 1967364, at *4 (noting three-day delay
between movant learning about its inadvertent disclosure and
filing for a protective order); *Amgen*, 190 F.R.D. at 292
("Moreover, it took Hoechst five days to recognize its error and
then only after counsel for Amgen drew Hoechst's attention to the
privileged documents."), but it does little to explain the
defendants' delay leading up to November 28, 2023.

Turning to the events of April 6, 2021, the defendants assert
that they reasonably believed that the 12 documents the United
States had identified as potentially privileged were the only such
documents that they had produced, such that there was no need for
further review once they clawed back those 12 documents.  The
circumstances of the communications between the United States and
the defendants suggest otherwise.  Over the course of roughly one
hour, the AUSA sent three emails to the defendants' counsel, each
identifying a different batch of potentially privileged documents.
It appears that the AUSA was sending the emails in real time as he
reviewed the defendants' productions and came across additional
potentially privileged documents.  To this court, a reasonable
reader would find it at least plausible that further review of the
productions might uncover additional potentially privileged
documents, a conclusion that is reinforced by the subsequent

revelation that there were over 600 other privileged documents lurking in the production. Thus, the defendants should have been on notice that there was at least a reasonable probability that they had inadvertently produced more privileged documents than the 12 that the United States had identified.

Finally, the defendants argue that their decision not to conduct any further privilege review after April 6, 2021, was reasonable because the defendants were actively engaged in settlement negotiations with the United States and chose to focus their resources on those negotiations rather than spend time and money reviewing documents that might never be used in the case. While the court is sympathetic to the desire to reduce costs, that decision does not change the fact that the defendants waited over two years to review their productions after receiving notice that they had inadvertently produced some privileged documents. Moreover, by at least January 28, 2022, the defendants knew that Omni would continue litigating the case as to alleged false claims for urinary tract infection testing, as expressly contemplated by the settlement agreement. (D. 52). Although the defendants did not specifically know that Omni and the United States entered a Common Interest Agreement in October 2022, they could have reasonably foreseen that the United States would share documents with Omni considering Omni was prosecuting the case on behalf of

the United States.[7]  *See* 31 U.S.C. § 3730(b)(1).  Thus, notwithstanding the partial settlement, the defendants had reason to know that they had inadvertently produced privileged documents and that those documents might resurface in the litigation.[8]

   3.  *Scope of Production*

   The scope of the defendants' inadvertent disclosure cuts both ways.  On one hand, the defendants inadvertently disclosed 613 privileged documents totaling well over 2,000 pages.  The production of so many privileged documents suggests that the disclosure was not a simple, isolated mistake and weighs in favor of finding a waiver.  *See Marrero Hernandez*, 2006 WL 1967364, at *5 (finding waiver where party inadvertently disclosed 2,000 privileged documents among 400,000 total documents produced); *Amgen*, 190 F.R.D. at 293 (finding waiver where party inadvertently disclosed "200 [privileged] documents comprising 3821 pages"); *see also Figueras*, 250 F.R.D. at 98 (finding waiver where disclosing party produced 3,400 pages of documents in a week and 5,000 pages total, which was not "an unusually large number of documents).  On

---

[7] In some sense it is immaterial that the defendants did not know that the United States would share their productions with Omni.  Even if Omni had requested these documents from the defendants directly in October 2022, they could have convincingly argued that the defendants waived any privilege by failing to claw the documents back from the United States.

[8] The court acknowledges that the defendants changed counsel in September 2022 and that the change may have diminished their awareness of the potential waiver issue.  Even so, that does not explain the defendants' failure to inquire into the inadvertent disclosure between the productions in late 2020 (or at least their receiving notice in April 2021) and their change of counsel in 2022.

the other hand, the inadvertently disclosed documents comprise a small portion of the 91,202 total documents that the defendants produced to the United States, which weighs against finding a waiver. *See Santiago*, 2015 WL 717945, at *7 ("In a typical inadvertent disclosure case, the court may assess whether the size of the wrongful disclosure, against the size of the production, suggests that the disclosure was a reasonable mistake."); *cf. Kaiser*, 2022 WL 182375, at *9 (finding waiver where "majority" of production consisted of privileged materials); *Indus. Commc'ns and Wireless*, 2008 WL 3498652, at *3 (finding waiver where production "was limited to a one-inch high stack of documents"). *But see Amgen*, 190 F.R.D. at 293 (finding waiver where party produced approximately 200 privileged documents and more than 70,000 documents total). On balance, the court finds that this factor is neutral in this case.

　　　　4.   *Extent of the Inadvertent Disclosure*

　　　　The extent of the inadvertent disclosure in this case is significant. As noted above, the disclosure consisted of over 600 privileged documents. The United States had access to those documents from late 2020 until December 2023. At least one AUSA reviewed at least a portion of the productions that contained the inadvertently disclosed documents. Omni has had access to the documents since approximately late October 2022. In the year that followed, Omni's counsel certainly reviewed at least some of those

documents, and it used some during a deposition in November 2023. The fact that opposing counsel have reviewed at least some of the documents, and the length of time for which they possessed those documents, weigh in favor of waiver. *See Kaiser*, 2022 WL 182375, at *9 (find waiver where counsel for multiple parties viewed production); *Santiago*, 2015 WL 717945, at *8 (finding waiver where opposing party had already reviewed documents and informed privilege holder of disclosure); *Marrero Hernandez*, 2006 WL 1967364, at *4 (finding waiver where "plaintiffs had access to the information during a four month period"); *Amgen*, 190 F.R.D. at 293 ("[W]ith respect to both the number of documents produced and the number of individuals who have already seen the documents, the scope of the disclosure in this case is dramatic."); *cf. Indus Commc'ns and Wireless*, 2008 WL 3498652, at *3 (finding waiver even though inadvertent disclosure was limited to one document); *Figueras*, 250 F.R.D. at 98 (same).

### 5.   *Overriding Interests of Fairness and Justice*

On balance, the overriding interests of fairness and justice weigh in favor of waiver even though such a finding may disadvantage the defendants.   "[A] determination of the overreaching issue of fairness involving the protection of an attorney-client privileged communication[] must be judged against the care or negligence with which the privilege is guarded with care and diligence or negligence and indifference."   *Figueras*, 250

F.R.D. at 98 (internal quotation marks omitted); *accord In re: New England Compounding Pharmacy*, 2016 WL 6883215, at *4.  "Here, the substantial size of the disclosure, the widespread dissemination of the disclosed documents, and the passage of time before [the defendants] asserted the privilege are indicative of negligence, not diligence."  *Kaiser*, 2022 WL 182375, at *9 (internal quotation marks omitted); *see Figueras*, 250 F.R.D. at 98 (finding "passage of over a month and a half before [privilege holder] became aware of the inadvertent production [was] indicative of negligence, not diligence"); *Marrero Hernandez*, 2006 WL 1967364, at *5 ("It would be unjust to reward Esso by simply stripping away from plaintiffs documents which[] they have now had for several months.").  Again, the court appreciates that the defendants made a conscious decision to forego a privilege review after April 6, 2021, and instead focus on settling the case.  Nonetheless, the defendants had reason to believe that they might have inadvertently disclosed privileged materials and chose to do nothing about it for over two years.

Considering the foregoing factors together, the court finds that the defendants have waived their privilege over the disputed materials.  As such, the defendants must return the materials to Omni.

**V.    CONCLUSION**

    For the foregoing reasons, the motion to compel is ALLOWED.


<u>So ordered</u>.

                                   <u>/s/ Donald L. Cabell</u>
                                   DONALD L. CABELL, U.S.M.J.

DATED:  June 7, 2024