**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al., ex rel.* OMNI HEALTHCARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MD SPINE SOLUTIONS LLC, D/B/A MD LABS INC., DENIS GRIZELJ, MATTHEW RUTLEDGE AND DOE HEALTHCARE PROVIDERS 1 - 100, <br><br> Defendants. | Case No. 18-cv-12558-PBS |

## DEFENDANTS' MOTION FOR ATTORNEY'S FEES

The manner in which this case arose is uniquely troubling. To Defendants' knowledge, no court has reported an instance of a relator knowingly manufacturing false claims solely to substantiate a *qui tam* action. Yet that is what Relator's ("Relator" or "Omni") sole owner, Dr. Craig Deligdish ("Deligdish"), did. If unchecked, this conduct threatens to increase fraud on federal health care programs and on the federal courts. Discovery revealed, and the Court in allowing summary judgment concluded, that Deligdish directed the staff of his medical practice to disregard the medical judgment of the practice's physicians by sending urine samples to MD Labs for PCR UTI testing when the providers ordered less expensive bacterial urine cultures ("BUC") for their patients. Deligdish unambiguously believed PCR UTI tests were not medically necessary and caused Relator to submit requisitions to MD Labs solely to substantiate allegations against Defendants. Deligdish's reliance on these fraudulent tests to bring this litigation was vexatious and primarily for the purpose of harassing Defendants, as those terms are used in the fee-shifting provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(d)(4). Deligdish's

- 1 -

actions constitute intentional fraud upon this Court, apparently under the notion that he is entitled to some type of prosecutorial immunity. Deligdish's behavior on behalf of Relator undermines the entire *qui tam* framework and should not be permitted to stand without consequence. As such, Defendants should be awarded a recovery of their attorney's fees incurred in connection with successfully defending this action.

## RELEVANT PROCEDURAL AND FACTUAL HISTORY

The general intent of the 1986 amendments to the FCA, including the addition of § 3730(e)(4) under which relators can obtain a portion of any recovery by the government in a *qui tam* action, was "to encourage persons with firsthand knowledge of fraudulent misconduct to report fraud." *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1154 (3d Cir.1991). Relator and Deligdish have made a lucrative business from being serial *qui tam* relators, with Deligdish going so far as to start another entity, Lo Tignov, whose sole purpose is to investigate potential *qui tam* defendants and reap substantial investigatory fees through settlements with its targets. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 253) at p. 1. Relator and Deligdish have received between $10-20 million in revenue from settlements or other awards from their numerous *qui tam* actions. *Id.*[1]

Here, Relator did not observe and report a fraud being perpetrated on the government, as Congress intended from the *qui tam* provision. Rather, Deligdish manufactured and intentionally caused the submission of false claims solely to create the basis for a lawsuit for Relator's (and

---

[1] *See*, *e.g.*, *U.S. v. Steward Health Care System LLC*, No. 3:21-cv-00870-S (N.D. Tex.); *U.S. ex rel. Omni Healthcare v. U.S. Oncology, Inc*., No. 1:19-cv-05125-NG-LB (E.D.N.Y.); *U.S. ex rel. Omni Healthcare Inc. v. OPKO Health, Inc.*, No. 1:19-cv-01670 (D.D.E.); *U.S. ex rel. Omni Healthcare, Inc. v. Health First, Inc.*, No. 6:19-cv-02237-RBD-LHP (M.D. Fla.); *U.S. ex rel. Omni Healthcare Inc. v. Millennium Laboratories, Inc.*, No. 14-cv-13052 (D. Mass.); *U.S. ex rel. Omni Healthcare Inc. v. Millennium Laboratories, Inc.*, No. 13-cv-10825 (D. Mass.); *U.S. v. Millennium Laboratories, Inc.*, No. 1:12-cv-10132-NMG (D. Mass.); *U.S. ex rel. Omni Healthcare Inc. v. AmerisourceBergen*, No. 12-cv-1178 (E.D.N.Y.).

Deligdish's) pecuniary gain. Discovery further revealed that Defendants are not the only victims Deligdish targeted with his fraudulent scheme. Deligdish admitted submitting duplicate samples to up to 10 *other* medical laboratories—without the knowledge of patients or their treating providers—with the intent to substantiate *qui tam* complaints, knowing that federal health care programs would be billed for these duplicative, medically unnecessary tests. See ECF No. 253 at p. 7.

On January 6, 2025, the Court issued its Memorandum and Order (ECF No. 279) allowing Defendants' Motion for Summary Judgment in its entirety, denying Relator's Motion for Summary Partial Judgment as moot, and issuing judgment (ECF No. 280) in favor of Defendants. The Court found that Deligdish:

> [I]nstructed his staff to order PCR UTI testing from MD Labs even when the provider had selected a BUC test for the patient. He did so in order to substantiate OMNI's FCA claims against MD Labs. All the PCR UTI testing that MD Labs performed for OMNI patients resulted from this switch.

ECF No. 279 at p. 3. The Court further noted:

> Dr. Deligdish admitted at his deposition that OMNI chose to order PCR UTI testing from MD Labs in every instance in order to substantiate FCA allegations against Defendants. See Dkt. 254-12 at 22-23; Dkt. 260 ¶¶ 60-61. In other words, Dr. Deligdish caused submission of false claims for PCR testing which he knew were not medically necessary.

*Id.* at p. 25.

At his deposition, Deligdish (personally and also as the corporate designee for Relator pursuant to Fed. R. Civ. P. 30(b)(6)) admitted that he made the decision in 2018 to instruct Relator's staff to use MD Labs. *See* Omni 30(b)(6) Depo. Tr., attached hereto as **Exhibit A**, at 94:6-14. He did so solely to substantiate the complaint in this action (*id.*), presumably knowing from the *qui tam* actions he previously filed that he was required to plead fraud with

- 3 -

particularity. And Omni continued to order PCR UTI tests from MD Labs for two months *after* it filed its Complaint alleging that PCR UTI testing was never medically necessary. *See* ECF No. 1 (Complaint filed on December 12, 2018); *see also* February 2019 PCR UTI order from Omni provider, attached hereto as **Exhibit B**. That Deligdish readily and unabashedly admitted to his deception to substantiate multiple potential *qui tam* actions against 11 laboratories, including the instant litigation, is remarkable and demonstrates that he believed he was above the law and would face no adverse consequences for his misconduct.

Over 33 months prior to the Court's Memorandum and Order, on April 4, 2022, Relator filed its Amended Complaint (ECF No. 71), substantiating its allegations that *Defendants* submitted false claims with Relator's *own* admittedly false test requisitions. As this Court noted, "*[a]ll* the PCR UTI testing that MD Labs performed" for Relator resulted from Deligdish "instruct[ing] his staff to order PCR UTI testing from MD Labs even when the provider had selected a BUC test for the patient." ECF No. 279 at p. 3 (emphasis added). Nonetheless, Relator alleged in its Amended Complaint filed in April 2022:

> 224.    By way of example and without limitation, on or about May 29, 2018, MD Labs performed 17 different, medically unnecessary, PCR tests on a Medicare patient to determine the presence of UTIs. The medically unnecessary tests were received and analyzed by MD Labs at its facility in Reno, Nevada on or about May 30, 2018. MD Labs subsequently submitted a false claim for payment of the medically unnecessary tests in the amount of $699.58, which was paid on June 15, 2018 under Medicare internal control number 18F610406900.
>
> 225.    Likewise, on or about May 29, 2018, MD Labs performed 17 different, medically unnecessary, PCR tests on a Medicare patient to determine the presence of UTIs. The medically unnecessary tests were received and analyzed by MD Labs at its facility in Reno, Nevada on or about May 30, 2018. MD Labs subsequently submitted a false claim for payment of the medically unnecessary tests in the amount of $699.58, which was paid on June 22, 2018 under Medicare internal control number 221815903990.

Am. Compl., ECF No. 71, ¶¶ 224, 225. What Relator knew when it filed its Amended Complaint,[2] but failed to disclose to the Court is that the PCR tests were false claims only because *Deligdish* intentionally intervened to cause physician orders for BUC tests to be transmitted to MD Labs for PCR UTI testing, without Defendants' knowledge, to manufacture the basis for this lawsuit.

Indeed, when Defendants challenged the sufficiency of Relator's allegations under Rules 9(b) and 12(b)(6) (*see* ECF No. 85) ("Motion to Dismiss"), Relator doubled down on its allegations and continued to highlight the May 2018 tests without disclosing the true genesis of those claims, extensively citing Paragraphs 224 and 225 of its Amended Complaint in opposition to Defendants motion. *See* ECF No. 93 at pp. 5, 6, 8, 9, 10, 14, 15 and 19.

Unaware of Deligdish's fraudulent actions, this Court specifically relied on those same allegations in denying Defendants' Motion to Dismiss. The Court's Memorandum and Order in connection with that motion (ECF No. 116) explicitly cited paragraphs 224 and 225 of the Amended Complaint in support of its holding that Relator had adequately alleged MD Labs submitted a false claim, noting that "[t]he examples [in ¶¶ 224-25] provide the dates when the tests were received and analyzed by MD Labs, when they were billed to Medicare, and the code number they were billed under." *See* ECF No. 116 at pp. 9-10; *see also id.* at p. 6 (restating the allegations set forth in and specifically citing ¶¶ 224-25). Had the Court known of Deligdish's fraud and that he "caused submission of false claims for PCR testing which he knew were not medically necessary," as it later found (ECF No. 279 at p. 25), it may well have not permitted Relator's claims to survive. To underscore this point, the Court stated at the summary judgment

---

[2] Deligdish's knowledge of his own fraudulent conduct is imputable to Relator in this litigation, as he is its sole owner. *See Demoulas v. Demoulas,* 428 Mass. 555, 584–85 (1998) (stating that "knowledge of officers and directors having substantial control of all activities of a corporation is imputed to the corporation") (citation omitted).

hearing that Deligdish's conduct was "really troubling," and that it was "shocked" when it learned of it. Hr'g Tr. (ECF No. 277) at 10:7-16.

Because this case should have been dismissed in 2022 had Relator truthfully set forth Deligdish's involvement in the fabrication of the allegedly false claims, Defendants are entitled to their reasonable attorney's fees for all litigation expenses concerning PCR UTI testing.

## ARGUMENT

Defendants request their reasonable attorney's fees pursuant to the fee shifting provision of the FCA, 31 U.S.C. § 3730(d)(4), which provides for such an award as follows:

> If the Government does not proceed with the action the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, *or* brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4) (emphasis added).

Here, the first two conditions are plainly satisfied. The Government did not elect to proceed with Relator's UTI-related claims. *See* ECF No. 45 (declining to intervene with respect to Relator's PCR UTI claims). Defendants prevailed in this action by obtaining summary judgment on all counts. *See* ECF No. 279 (granting Defendants' motion for summary judgment in its entirety and denying as moot Relator's motion for partial summary judgment); *see also* ECF No. 280 (entering judgment in favor of Defendants). Thus, the only question that remains is whether Relator's claims were "clearly frivolous, clearly vexations, *or* brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4) (emphasis added).

"In order to recover attorneys' fees in a *qui tam* action, a successful defendant 'must demonstrate that the plaintiff has misused his statutory privilege and distorted the intent of the legislation.'" *Pack v. Hickey*, 776 Fed. Appx. 549, 558 (10th Cir. 2019) (quoting *U.S. ex rel.*

*Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1058 n.22 (10th Cir. 2004) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 419-20 (1978))). The FCA specifically authorizes the Court to award attorney's fees and expenses if the suit was "(1) clearly frivolous; (2) clearly vexatious; or (3) brought primarily for purposes of harassment. Any one of these three conditions is sufficient for an award of attorney's fees." *U.S. ex rel. Omni Healthcare v. Health First, Inc.*, No. 6:19-CV-2237-RBD-LRH, 2021 WL 8201493, at *3 (M.D. Fla. Sept. 14, 2021), *report and recommendation adopted*, No. 6:19-CV-2237-RBD-LRH, 2022 WL 1238541 (M.D. Fla. Jan. 12, 2022) (citation omitted); *see also U.S. ex rel. Tracy v. Emigration Improvement Dist.*, No. 21-4059, 2022 WL 16570934, at *4 (10th Cir. Nov. 1, 2022) (noting that "findings that the action was clearly vexatious and brought primarily for purposes of harassment" were sufficient to support fee award even in absence of finding that claim was frivolous). "Vexatious and harassing claims are those instituted maliciously or without good cause." *U.S. ex rel. Nargol v. DePuy Orthopaedics, Inc.*, No. CV 12-10896-MPK, 2022 WL 203654, at *3 (D. Mass. Jan. 24, 2022) (citation omitted).

It is difficult to imagine what could be a more malicious claim lacking good cause than Deligdish "caus[ing the] submission of false claims for PCR testing which he knew were not medically necessary" (ECF No. 279 at p. 25) to substantiate claims against Defendants for his own pecuniary gain. Relator and Deligdish's scheme dates to the start of the parties' relationship, when Deligdish first made the decision to instruct his office staff to send requisitions for PCR UTI tests to MD Labs to accumulate evidence to substantiate a complaint. *See* Omni 30(b)(6) Depo. Tr., **Exhibit A**, at 94:6-14. Had Relator been forthcoming in its Amended Complaint that it had no evidence of any false claim other than those caused by Deligdish, the Court would have properly dismissed this litigation in 2022 and Defendants would not have had to spend

significant financial resources on discovery and multiple rounds of further dispositive motions, only to ultimately succeed on summary judgment in 2025.

In short, Relator and Deligdish knowingly and intentionally deceived the Court and Defendants, forcing Defendants to expend significant resources on a lawsuit that should have been dismissed nearly three years ago. Relator and Deligdish's behavior completely undercuts the purpose of the False Claims Act and to permit it without consequence will only engender future relator fraud and cause financial harm to the government through submission of false claims. Defendants will provide invoices to support their claim for attorney's fees after the Court determines their entitlement to fees, or earlier at the Court's direction.

## CONCLUSION

WHEREFORE, Defendants MD Spine Solutions LLC, d/b/a MD Labs Inc., Denis Grizelj and Matthew Rutledge respectfully move this Court for an award of attorney's fees incurred in this lawsuit from the time of the filing of Relator Omni Healthcare, Inc.'s Amended Complaint on April 4, 2022 (ECF No. 71), through and including the present Motion for Attorney's Fees.

/ / /

Dated: February 4, 2025

Respectfully submitted,

MD SPINE SOLUTIONS LLC, D/B/A MD LABS INC., DENIS GRIZELJ AND MATTHEW RUTLEDGE

By their attorneys,

*/s/ Seth B. Orkand*
Seth B. Orkand (BBO #669810)
Julianna M. Charpentier (BBO #703284)
ROBINSON & COLE LLP
One Boston Place, 25th Floor
Boston, Massachusetts 02108
Tel: (617) 557-5915
Fax: (617) 557-5999
sorkand@rc.com
jcharpentier@rc.com

Edward J. Heath (admitted *pro hac vice)*
Kevin P. Daly (BBO #675644)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel: (860) 275-8200
Fax: (860) 275-8299
eheath@rc.com
kdaly@rc.com

Danielle H. Tangorre (admitted *pro hac vice*)
ROBINSON & COLE LLP
Chrysler East Building
666 Third Avenue, 20th Fl.
New York, NY 10017
Tel: (212) 451-2900
Fax: (212) 451-2999
dtangorre@rc.com

- 10 -

## L.R. 7.1 CERTIFICATION

I hereby certify that on February 3, 2025, I contacted counsel for the Relator in good faith to resolve or narrow the issues presented herein. Counsel did not respond.

>                    */s/ Seth B. Orkand*
>                    Seth B. Orkand

**CERTIFICATE OF SERVICE**

      I, Seth B. Orkand, certify that a copy of the foregoing document was sent to the following counsel of record for Plaintiff Omni Healthcare, Inc. by ECF on February 4, 2025.

Scott M. Heidorn, Esq.
BERGSTRESSER & POLLOCK PC
52 Temple Place
Boston, MA 02111
scott@bergstresser.com

Thomas M. Kenny, Esq.
Svjetlana Tesic, Esq.
SPIRO HARRISON & NELSON
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
tkenny@spiroharrison.com

                                              */s/ Seth B. Orkand*
                                              Seth B. Orkand