**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
OMNI HEALTHCARE, INC., et al.,          )
                                        )
                 Plaintiffs,            )
                                        )
v.                                      )        Civil Action
                                        )        No. 18-cv-12558-PBS
MD SPINE SOLUTIONS LLC, et al.,         )
                                        )
                 Defendants.            )
_____ )

**ORDER**

September 5, 2025

Saris, J.

In this qui tam action under the False Claims Act ("FCA"),
the Court granted summary judgment to Defendants with regard to
Relator's claims concerning polymerase chain reaction ("PCR")-
based testing for urinary tract infections ("UTIs"). See OMNI
Healthcare, Inc. v. MD Spine Sols. LLC, 761 F. Supp. 3d 356, 370-
71 (D. Mass. 2025), appeal filed, No. 25-1110 (1st Cir. Feb. 3,
2025). Defendants now move for an award of attorney's fees incurred
defending against those claims since the filing of Relator's
amended complaint on April 4, 2022.

The FCA includes the following fee-shifting provision for
prevailing defendants:

> If the Government does not proceed with the action and
> the person bringing the action conducts the action, the
> court may award to the defendant its reasonable
> attorneys' fees and expenses if the defendant prevails

1

in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4). "The award of fees under" this provision "is reserved for rare and special circumstances." United States ex rel. Rafizadeh v. Cont'l Common, Inc., 553 F.3d 869, 875 (5th Cir. 2008) (quoting Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1006-07 (9th Cir. 2002)); see United States ex rel. Grynberg v. Praxair, Inc., 389 F.3d 1038, 1059 (10th Cir. 2004). "A successful defendant" seeking attorney's fees under § 3730(d)(4) "must demonstrate that the plaintiff has misused his statutory privilege and distorted the intent of the legislation." Grynberg, 389 F.3d at 1058 n.22.

Relator does not dispute that the government did not intervene in connection with its UTI testing claims or that Defendants prevailed on those claims.[1] For their part, Defendants do not

---

[1] Relator does assert that it would be improper to award attorney's fees to Defendants because its lawsuit "led to a Settlement Agreement under which . . . Defendants . . . admitted to extensive wrongful conduct and are reimbursing the government and the taxpayer up to $16 million for performing medically unnecessary testing." Dkt. 287 at 6. However, Defendants are seeking fees incurred in connection with only the claims on which they prevailed on summary judgment, not the claims they settled. Relator does not argue that Defendants' settlement of certain claims bars them from receiving fees incurred in connection with the claims on which they prevailed. Cf. Fox v. Vice, 563 U.S. 826, 835 (2011) (recognizing that in civil rights cases a court may award attorney's fees to both parties under 42 U.S.C. § 1988, the plaintiff for the work to bring meritorious claims and the defendant for the work to defend against frivolous ones).

contend that the claims at issue were frivolous. The key question, then, is whether Relator's UTI testing claims were "clearly vexatious[] or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). "An action is 'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." Rafizadeh, 553 F.3d at 875 (quoting Pfingston, 284 F.3d at 1006).

Defendants argue that Relator's UTI testing claims were clearly vexatious and brought primarily for purposes of harassment because Relator "knowingly manufactur[ed] false claims solely to substantiate a qui tam action." Dkt. 286 at 1. The Court agrees and finds Relator's conduct to be extremely troubling. The undisputed summary judgment record demonstrated that even though Dr. Craig Deligdish, the owner of Relator (a medical practice), believed PCR UTI testing was never medically necessary, he "instructed his staff to order [such] testing from [Defendant] MD Labs even when the provider had selected a [cheaper] test for the patient." OMNI Healthcare, Inc., 761 F. Supp. 3d at 360; Dkt. 260 ¶ 65. "In other words, Dr. Deligdish caused submission of false claims for PCR testing which he knew were not medically necessary," OMNI Healthcare, Inc., 761 F. Supp. 3d at 369, and thereby violated the FCA himself, see 31 U.S.C. § 3729(a)(1)(A) (rendering liable "any person who . . . knowingly . . . causes to be presented[] a

false or fraudulent claim for payment"). Dr. Deligdish "did so in order to substantiate [Relator]'s FCA claims against MD Labs." OMNI Healthcare, Inc., 761 F. Supp. 3d at 360. He even continued to order PCR UTI testing from MD Labs after the filing of the initial complaint in this case in December 2018, which alleged that those tests were not medically necessary. See Dkt. 259-8 at 2-3; Dkt. 286-2 at 1-2. Knowingly causing the submission of false claims for payment in order to substantiate an FCA suit is a misuse of the statute's relator provision. Seeking financial gain based on such claims is an improper and vexatious purpose for filing an FCA suit.

Other undisputed facts underscore the vexatious nature of Relator's conduct. On multiple occasions, Dr. Deligdish directed the submission of a single urine sample on the same day for PCR-based UTI testing at ten laboratories even though he did not believe the testing was medically necessary and knew Medicare or the patient's Medicare Advantage plan would be billed for each test. See Dkt. 254-12 at 42-43; Dkt. 290-1 at 33-37; Dkt. 260 ¶ 62. Relator does not explain why the simultaneous performance of ten UTI tests on a single sample would be medically necessary.

Relator's arguments against an award of attorney's fees are unconvincing. Relator contends that its own fraudulent conduct did not absolve Defendants of liability under the FCA. Along the same lines, Relator notes that the Court did not rely on its misconduct

4

in granting summary judgment to Defendants on the UTI testing claims. It is true that "[t]he FCA is in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a qui tam plaintiff with 'unclean hands.'" Cell Therapeutics Inc. v. Lash Grp. Inc., 586 F.3d 1204, 1208 (9th Cir. 2009) (alteration in original) (quoting Mortgs., Inc. v. U.S. Dist. Ct., 934 F.2d 209, 213 (9th Cir. 1991) (per curiam)). But while Relator's misconduct may not have provided a basis to dismiss any meritorious claim, Relator ultimately failed to demonstrate that Defendants violated the FCA in connection with their UTI testing. The operative question under § 3730(d)(4) is whether Relator's unsuccessful claims were clearly vexatious or brought primarily for purposes of harassment, which does not turn on whether Relator's own fraudulent conduct affected the merits of its claims.

Relator also points out that the FCA authorizes courts to account for a relator's own fraudulent conduct by reducing its share of any monetary proceeds from the action. See 31 U.S.C. § 3730(d)(3) ("[I]f the court finds that the action was brought by a person who planned and initiated the [FCA] violation . . . upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the person would otherwise receive . . . ."). In Relator's view, this provision indicates that courts should not

take a relator's own fraudulent conduct into account in other ways, such as by awarding attorney's fees to prevailing defendants. Section 3730(d)(3) only applies, however, when the FCA claims result in a monetary award or settlement. It does not address the circumstances at issue here where a relator engages in fraudulent conduct to substantiate FCA claims that prove to be without merit.

Finally, Relator asserts that awarding attorney's fees under these circumstances would contravene the intent of the FCA's relator provision. As Relator stresses, the "financial incentive[s]" in the FCA aim to "encourage[] would-be relators to expose fraud," United States ex rel. Duxbury v. Ortho Biotech Prods., L.P., 719 F.3d 31, 33 (1st Cir. 2013) (quoting United States ex rel. Poteet v. Bahler Med., Inc., 619 F.3d 104, 107 (1st Cir. 2010)), including by inducing participants in a fraud to turn on one another, see Mortgs., Inc., 934 F.2d at 213; United States ex rel. Morgan v. Champion Fitness, Inc., 368 F. Supp. 3d 1198, 1207-08 (C.D. Ill. 2019). That said, the FCA does not prioritize this aim at all costs, and certain aspects of the qui tam statute reflect the "conflicting goal[]" of "preventing opportunistic suits." United States v. Millenium Laby's, Inc., 923 F.3d 240, 252 (1st Cir. 2019) (quoting United States ex rel. Wilson v. Bristol-Myers Squibb, Inc., 750 F.3d 111, 117 (1st Cir. 2014)). Relator did not turn on Defendants after they all participated in a fraud together. Instead, Relator committed its own fraudulent conduct

specifically for the purpose of bringing an FCA lawsuit. Relator cites no authority suggesting that this opportunistic behavior represents the type of FCA lawsuit Congress intended to incentivize wrongdoers to bring. Because Relator "has misused [its] statutory privilege and distorted the intent of the legislation," Defendants are entitled to attorney's fees incurred in connection with the UTI testing claims since the filing of the amended complaint on April 4, 2022. Grynberg, 389 F.3d at 1058 n.22.

Accordingly, the Court **ALLOWS** Defendants' motion for attorney's fees (Dkt. 286). Because Relator has filed an appeal, the parties shall file a joint status report within twenty-one days from the date of entry of the appellate mandate either with an agreed-upon amount of attorney's fees to which Defendant is entitled or a proposed briefing schedule to determine the appropriate amount.


SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge