**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al., ex rel.* OMNI HEALTHCARE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MD SPINE SOLUTIONS LLC, D/B/A MD LABS INC., DENIS GRIZELJ, MATTHEW RUTLEDGE AND DOE HEALTHCARE PROVIDERS 1 - 100,<br><br>Defendants. | Case No. 18-cv-12558-PBS |

**REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PREJUDGMENT ATTACHMENT ON TRUSTEE PROCESS**

Pursuant to this Court's order dated February 6, 2026 (ECF No. 309), Defendants MD Spine Solutions LLC, d/b/a MD Labs, Denis Grizelj, and Matthew Rutledge (collectively, "Defendants") respectfully submit this Reply Memorandum in support of their Motion for Temporary Restraining Order and Prejudgment Attachment to Trustee Process (ECF No. 304) and in response to Plaintiff-Relator OMNI HealthCare, Inc.'s ("Omni" or "Relator") Opposition thereto (ECF No. 307).

Omni's Opposition to Defendants' Motion for Temporary Restraining Order and Prejudgment Attachment to Trustee Process (ECF No. 307) ignores both applicable law regarding attorneys' fee awards and the ample facts in demonstrating that Deligdish is Omni's alter ego. Further, Omni's claim that it has satisfied certain judgments ignores extraordinary lengths its and Deligdish's creditors have had to take to obtain payment rightfully owed.

**I. Defendants are Entitled to Prejudgment Attachment**

As an initial matter, Defendants' entitlement to prejudgment attachment is independent of whether this Court grants the injunctive relief Defendants seek. Defendants need only establish "'(1) reasonable likelihood of success on merits, and (2) reasonable likelihood of recovering judgment equal to or greater than amount of attachment sought that is over and above any liability insurance shown by defendant to be available to satisfy judgment.'" *Goldstein*, 671 F. Supp. 3d at 75 (quoting *Ruggieri v. M.I.W. Corp.*, 826 F. Supp. 2d 334, 336 (D. Mass. 2011). Because Defendants can establish both of these criteria, as discussed below, the requirements of Mass. R. Civ. P. 4.1 are satisfied and the Court should promptly order prejudgment attachment to preserve Defendants' ability to collect on the judgment. Omni's Opposition does not argue otherwise.

**II. Defendants Are Likely to Succeed on the Merits of Establishing the Amount of Their Attorneys' Fee Award**

Omni does not attempt to argue whether Defendants will succeed in establishing their entitlement to an award of attorneys' fees—this Court has already ruled that in Defendants' favor on that issue—but rather asserts that no more than 20 percent of the fees amount sought are "duplicative, unproductive, excessive, or otherwise unnecessary." ECF No. 307 at 1; ECF No. 310. For the reasons discussed herein and in Defendants' Petition for Attorneys' Fees and Costs (ECF No. 300), the amount of fees sought by Defendants is reasonable. In any event, there is a "strong presumption" that counsel's lodestar normally "represents the reasonable fee." *Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

However, for the purposes of this motion, the Court need not make a final determination of the amount of attorneys' fees owed to Defendants (although Omni essentially concedes Defendants are entitled to at least 80 percent of the fees they are seeking, or at least $1,635,135.03

(*see* ECF No. 310)). Rather, to enter a temporary restraining order or order prejudgment attachment, the Court need only find that Defendants have a substantial likelihood of succeeding in being awarded a judgment in the amount sought. *See, e.g.*, *Goldstein v. Batista Contracting LLC*, 671 F. Supp. 3d 68, 72 (D. Mass. 2023) (Saris, J.). Defendants have satisfied that burden.[1]

Of course, lawyers "should exercise billing judgment, making a good-faith effort to exclude from [her] fee request hours that are excessive, redundant, or otherwise unnecessary.'" *United States ex re. Miller v. Holzmann*, 575 F. Supp. 2d 2, 21 (D.D.C. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.32 (1983)). However, Omni cannot vexatiously file litigation against Defendants and then complain about the time required to mount a formidable defense. *See Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980)) ("a [party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [their opponent] in response"); *Holzmann*, 575 F. Supp. 2d at 22; *Perkins v. Orleans Athletic Club*, 429 F. Supp. 661, 667 (E.D. La. 1976) ("Those who elect a militant defense . . . [are responsible for] the time and effort they exact from their opponents."). Although *Holzmann* concerned the more common situation of plaintiffs seeking fees from defendants, it applies with equal force to the facts here, as the FCA explicitly permits defendants to recover reasonable attorney's fees and expenses in a clearly vexatious case such as this. *See* 31 U.S.C. § 3730(d)(4). The fact remains that but for Omni's fraud, Defendants would not have incurred *any* of the fees or costs sought in their petition.

Despite Omni's gripes about the fees Defendants incurred with respect to attorney conferences, courts routinely recognize that the collaboration of multiple attorneys does not

[1] In the event that the Court credits Relator with respect to its argument as to the ultimate amount of attorney's fees that is likely to be awarded, the Court could award Defendants the prejudgment relief sought in a lower amount.

indicate that there was a duplication of effort.[2] *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001) ("Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic. Consequently, the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing. Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue. ") (internal citation omitted). Indeed, counsel would have been *less* efficient had they not met weekly to discuss case strategy and delegate tasks to attorneys on the case. These team meetings ultimately *reduced* the fees Defendants incurred rather than increase them.

Moreover, time spent conferencing and engaging in other collegial activities is a necessary and productive part of the litigation process, is an entirely reasonable expenditure of time, and is thus fully compensable. *See Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187, at *8 (6th. Cir. 2000) ("time spent by counsel discussing the case is properly compensable, and the mere fact that attorneys confer with one another does not automatically constitute duplication of efforts") (citing *Glover v. Johnson*, 138 F.3d 229, 252 (6th Cir. 1998)); *MCC Mgmt. v. Int'l. Bancshares Corp.*, No. CIV-06-1345-M, 2010, 2010 WL 3615606, at *13-14 (W.D. Okla. Sept. 28,2010) (allowing compensation for conferencing when three firms represented plaintiff and held weekly conference calls to review litigation strategy)

Duplication is permitted when it is justified: for example, multiple attorneys may attend a deposition if one is questioning and the other handling documents, or multiple attorneys may be

[2] *See Equal Emp't Opportunity Comm'n v. Local 638 . . . Local 28 of the Sheet Metal Workers' Int'l Ass'n*, No. 71 Civ. 2877, 1991 U.S. Dist. LEXIS 18189 (S.D.N.Y. Dec. 18, 1991) ("Having two attorneys research and participate in drafting a brief is a common practice and therefore not necessarily duplicative."); *New York State Ass'n of Retarded Children v. Carey*, 711 E2d 1136, 1146 (2d Cir. 1983) (prevailing parties not barred from receiving fees for multiple lawyers).

involved where the litigation is complex and attorneys are responsible for "discrete aspects" of the litigation. For example, in *Rosie D. v. Patrick*, 593 F. Supp. 2d 325, 332 (D. Mass. 2009), Judge Ponsor denied a request to reduce duplicative time in a case that was "enormously complex, both factually and legally. The number of attorneys comfortably matched the complexity of the litigation." He noted that the defendants in that case "litigated this case to the hilt," unsuccessfully appealed to the First Circuit, engaged in discovery that was "very contentious and resulted in numerous motions," and involved "numerous lay and expert witnesses." *Id.* He noted, "Conferencing, to a significant but not excessive extent, was simply a necessary element of managing the litigation competently." The court found, "These efficiencies helped to lower the necessary hours." *Id.*

This was a bitterly contested case that required six attorneys to bill more than 300 hours on this matter *over the course of three years.* Defendants were required to mount a significant defense to Omni's aggressive and formidable prosecution of its vexatious claims. This case touched nearly all aspects of the Defendants' business, including the development and design of its PCR UTI testing panel, its sales tactics, the manner in which it compensated its sales staff, and the medical necessity of PCR UTI testing generally, among others. Defendants not only successfully defeated Omni's claims with respect to each of these issues, they uncovered Omni's own fraud in the process, in which at least thirteen laboratories other than MD Labs were victims.

As Omni argued in connection with its own fee motion in this case, where the situation was reversed, "'[where] a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee'" – even where the plaintiff failed to prevail on every contention raised in the lawsuit. ECF No. 92 at 14 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 569 (1986) (internal quotation omitted)). Here, Defendants prevailed on every contention raised by Omni in

its lawsuit. But for Deligdish's fraud, they would not have incurred *any* fees or costs in connection with its PCR UTI testing. Defendants are entitled to be fully compensated for their defense.

### III. Defendants May Attach Deligdish's Assets as Omni's Alter Ego

Omni is flatly mistaken that Defendants' sole basis in support of their argument that Deligdish is Omni's alter ego is merely that Deligdish is Omni's owner. *See* ECF No. 307 at 6. Indeed, Omni does not even attempt to argue that Deligdish did not use Omni to promote fraud. *See generally* ECF No. 307. Defendants need not address every factor considered under Massachusetts law (nor could they without the benefit of discovery) to establish a reasonable likelihood of success in establishing that Deligdish is Omni's alter ego. *See George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129, 158 (D. Mass. 1998) (Saris, J.) ("The factors are weighed, not counted.").

Nonetheless, in addition to establishing Deligdish's use of Omni to promote fraud, Defendants have also shown that Deligdish is Omni's sole owner, Deligdish has pervasive control over Omni, and the publicly available information regarding Omni's bank account balances shows severe undercapitalization compared to the judgments entered against it. As an example of Omni's undercapitalization, one of its vendors, MicroGenDx, LLC, obtained a judgment against Omni in November 2022 in the amount of $307,360.00 as a result of Omni failing to pay for diagnostic testing services. *See* Summary Final Judgment, *MicrogenDx, LLC v. Omni Healthcare, Inc.*, No. 05-2021-CA-019260 (Fla. 18th Cir. Dist., Nov. 17, 2022) (ECF No. 305-3). In his deposition in that case, Dr. Deligdish testified that Omni did not pay for COVID tests supplied by the plaintiff because, "***OMNI always has a cash flow problem***." Deligdish Depo. Tr. at 49:5-23, attached as **Exhibit 1.** He further testified that Omni owed AmerisourceBergen (a supplier of chemotherapy drugs) $500,000 for pharmaceuticals, and that Omni was only able to pay a portion of that amount

after receiving a settlement from a *qui tam* case Omni filed against Cardinal Health, Inc. *See id.* at 41:4-17. Without discovery, Omni's current financial condition is unknown, but this deposition testimony reveals that Omni "always has cash flow problems" that prevent it from paying judgments.

**IV. Defendants Have Established the Risk of Irreparable Harm**

The risk of irreparable harm to Defendants is clear because there is a demonstrable risk that Omni cannot or will not pay the attorneys' fee award to be ordered by this Court, thus rendering the prospect of money damages inherently insufficient. Absent the requested injunctive relief preventing Omni and Deligdish from dissipating assets, Omni's past conduct with other litigants demonstrates that Defendants' ability to collect the award owed to it is in jeopardy—a sufficient basis to support a finding of irreparable harm. *See*, *e.g.*, *AngioDynamics, Inc. v. Biolitec AG*, 711 F.3d 248, 251–52 (1st Cir. 2013) (upholding District Court's finding that plaintiff had demonstrated irreparable harm where it showed that it "has been put through hoops and may not be able to collect on its judgment" against the defendant.").

Regardless of whether some of the judgments against Omni have now been paid, Omni's opposition fails to disclose that Omni failed to pay those judgments until the judgment creditors in those actions jumped through extraordinary hoops. This lack of candor is troubling. For example, in the suit filed by North Brevard County Hospital District d/b/a Parrish Medical Center against Omni and Deligdish for unpaid rent, Omni and Deligdish refused to provide a list of assets and other information as required by Florida law and only made payment once it received notice that Parrish had obtained writs of garnishment and served on various payors, including Blue Cross Blue Shield of Florida. *See* Motion to Compel Responses to and Service of Fact Information Sheet, attached hereto as **Exhibit 2**; *see also* Docket, attached hereto as **Exhibit 3** (showing voluntary dismissal of garnishment and satisfaction of judgment entered after garnishee answers).

Similarly, Omni also refused to pay the judgment against it in *MicrogenDX, LLC. v. Omni Healthcare*. In that case, the satisfaction of judgment was filed only *after* garnishees sent garnished funds to the plaintiffs that the satisfaction of judgment was filed. *See*, *e.g.*, Agreed Order Dissolving Writs of Garnishment Directed to Blue Cross and Blue Shield of Florida, Inc. and Directing Release of Garnished Funds, attached hereto as **Exhibit 4** (ordering garnishee BCBS of Florida to immediately disburse the full amount of garnished funds, $191,830.57, to plaintiff Microgen DX, LLC pursuant to the parties' agreement); *see also* Agreed Order Dissolving Writs of Garnishment Directed to Blue Cross and Blue Shield of Florida, Inc. and Directing Release of Garnished Funds, attached hereto as **Exhibit 5** (ordering garnishee TD Bank to immediately disburse the full amount of garnished funds, $45,134.65, to plaintiff Microgen DX, LLC pursuant to the parties' agreement).

As for the claim against Deligdish individually for which he has failed to pay judgment in over two decades cited in Defendant's Motion, although Omni now claims that service was improper, the record shows that Deligdish repeatedly evaded service in connection with that plaintiff's 2023 efforts to serve his Complaint to Renew Judgment. *See* July 5, 2023 Verified Return of Non-Service, attached hereto as **Exhibit 6** (describing ten attempts to serve Deligdish at his residence, including multiple instances of lights on inside the dwelling and one instance where lights were on, the garage door was open, and a vehicle was inside of the garage); *see also* September 23, 2023 Verified Return of Non-Service, attached hereto as **Exhibit 7** (describing five additional attempts to serve Deligdish at his residence, including one instance in which an occupant of Deligdish's residence closed the garage while the process server was attempting service).[3] Omni

[3] Deligdish also attempted to evade service in the matter filed by George Mikitarian. *See* ECF No. 305-11 (describing Deligdish's blatant efforts to evade service, including a local process serving attempting "to serve Dr. Deligdish fourteen (14) times without success, despite at times observing Dr. Deligdish in the window of his home

offers no explanation whatsoever for why Deligdish has failed to pay the judgment ***for over twenty years***, of which he was ostensibly aware given that he personally attended at least one pretrial conference in that matter on March 25, 2003. *See* County Court Minute Sheet, attached hereto as **Exhibit 8**.

Deligdish's playbook is clear. He and Omni have an extensive history of failing to abide by contractual obligations,[4] undercapitalizing Omni, improperly evading service, and failing to timely satisfy judgments entered against them, thus forcing their creditors to go to extraordinary lengths for a hope of payment. Defendants, having been subject to years of vexatious and harassing litigation as a result of Deligdish's fraudulent conduct, should not be forced to expend even more resources chasing the award that will ultimately be entered by this Court.

## V. The Balance of Hardships Weigh in Favor of Entering the Restraining Order

Regarding the balance of harms, whether an attachment on incoming payments from health insurance payors would impact patient care is entirely within Omni's (and Deligdish's) control. As an initial matter, the proposed temporary restraining order permits Omni to spend funds on legitimate business expenses. Moreover, Omni can eliminate any claimed impact on patient care by promptly paying the attorneys' fee award ordered by the Court in full, thereby obviating the need for MD Labs to attach any assets owed to Omni. On the other hand, the patient care provided by Defendants has suffered for the three-year period of this litigation, and their patient care operations continue to be hampered by the loss of use of the more than $2 million in attorneys' fees and expenses they have incurred. Defendants will plainly suffer irreparable harm if they are unable to recover their legal fees and costs.

---

located at 815 Sanderling Drive, Melbourne, FL 32903 – only to walk up to the door and for Dr. Deligdish to 'disappear.'").

[4] Omni's Opposition does not address the pending breach of contract claim against it by SQ Care Management, LLC. *See* ECF No. 305-8.

Moreover, Omni mischaracterizes the facts with respect to its assertion that Defendants "currently owe OMNI, pursuant to a settlement agreement in this case with OMNI and the United States, an amount that may equal or exceed any judgment Defendants will obtain here." ECF No. 307 at 2. To be clear, Defendants do not currently owe Omni anything. Rather, they are required to make payments to the United States under the terms negotiated between Defendants and the government, and Omni is entitled to a share of those payments. That settlement agreement is unrelated to the claims for which Omni owes Defendants attorneys' fees as a result of manufacturing a basis to pursue vexatious and harassing litigation.

To allow Omni to avoid prompt payment because it expects to receive a portion of the funds Defendants will pay to the government on a negotiated schedule based on Defendants' ability to pay over the span of years does not accomplish the statutory goal of penalizing relators for bringing vexatious and harassing litigation under 31 U.S.C. § 3730(d)(4), and it serves to only delay Defendants' recoupment of the money they needlessly spent on their defense. Additional delay would compound the harm they have suffered. Defendants' future payments to the government are entirely unrelated from the present issue before the Court regarding the attorneys' fees Omni now owes, for which Defendants deserve to be made whole without delay.

**CONCLUSION**

For the foregoing reasons and those set forth in Defendants' Motion for Temporary Restraining Order and Prejudgment Attachment on Trustee Process and Memorandum of Law in support thereof, Defendants respectfully request that this Court grant their Motion for Temporary Restraining Order and Prejudgment Attachment on Trustee Process.

Dated: February 12, 2026

Respectfully submitted,

MD SPINE SOLUTIONS LLC, D/B/A
MD LABS INC., DENIS GRIZELJ AND
MATTHEW RUTLEDGE

By their attorneys,

*/s/ Seth B. Orkand*
Seth B. Orkand (BBO #669810)
Julianna M. Charpentier (BBO #703284)
ROBINSON & COLE LLP
53 State Street, 32nd Floor
Boston, MA 02109
Tel: (617) 557-5915
Fax: (617) 557-5999
sorkand@rc.com
jcharpentier@rc.com

Edward J. Heath (admitted *pro hac vice)*
Kevin P. Daly (BBO #675644)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel: (860) 275-8200
Fax: (860) 275-8299
eheath@rc.com
kdaly@rc.com

Danielle H. Tangorre (admitted *pro hac vice*)
ROBINSON & COLE LLP
Chrysler East Building
666 Third Avenue, 20th Fl.
New York, NY 10017
Tel: (212) 451-2900
Fax: (212) 451-2999
dtangorre@rc.com

**CERTIFICATE OF SERVICE**

I, Seth B. Orkand, hereby certify that on February 12, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ Seth B. Orkand*
Seth B. Orkand