**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA, *et al., ex rel.* OMNI HEALTHCARE, INC.,

Plaintiffs,

v.

MD SPINE SOLUTIONS LLC, D/B/A MD LABS INC., DENIS GRIZELJ, MATTHEW RUTLEDGE AND DOE HEALTHCARE PROVIDERS 1 - 100,

Defendants.

Case No. 18-cv-12558-PBS

**REPLY IN SUPPORT OF DEFENDANTS' PETITION FOR ATTORNEYS' FEES AND COSTS**

Omni suggests a 20 percent reduction in the fees and costs sought by Defendants with sweeping generalizations and vague, blanket objections without citing any single specific invoice or time entry as being duplicative or unnecessary. And it complains of measures that actually *increased* efficiency, reducing the total amount of fees ultimately sought.

Yet Omni fails to acknowledge that *none* of the fees and costs incurred by Defendants would have been necessary but for Omni's vexatious litigation based on its own violations of the False Claims Act. Omni argued in support of its own motion for fees, "Courts ordinarily should defer to the fee claimant's judgment as to the reasonableness of, and necessity for, the work." ECF No. 105 at 11 (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case"); *United States ex rel. Averback v. Pastor Med. Assocs. P.C.*, 224 F. Supp. 2d 342, 352 (D. Mass. 2002) ("the Court cannot engage in a speculative calculation of how long an attorney should take when reviewing depositions and preparing

abstracts . . . and takes at face value the time [claimant] charges for the review of these depositions.")). This argument applies with equal force here, where the roles are reversed.

The Court should not countenance Omni's vexatious conduct by requiring Defendants to bear *any* of the fees and costs associated with the litigation that they would not have otherwise incurred but for Omni's fraud.

**I. Defendants' Fees and Costs Were Not Duplicative, Unproductive, Excessive, or Unnecessary**

Omni incorrectly asserts that at least 20 percent of the fees sought are "duplicative, unproductive, excessive, or otherwise unnecessary." ECF No. 310 at 3. For the reasons discussed herein and in Defendants' Reply in Support of their Motion for Temporary Restraining Order and Prejudgment Attachment on Trustee Process (ECF No. 311), the amount of fees sought by Defendants is reasonable, and there is a "strong presumption" that counsel's lodestar normally "represents the reasonable fee." *Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

Of course, lawyers "should exercise billing judgment, making a good-faith effort to exclude from [her] fee request hours that are excessive, redundant, or otherwise unnecessary.'" *United States ex re. Miller v. Holzmann*, 575 F. Supp. 2d 2, 21 (D.D.C. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.32 (1983)). However, Omni cannot vexatiously file litigation against Defendants and then complain about the time required to mount an appropriate defense. *See Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980)) ("a [party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [their opponent] in response"); *Holzmann*, 575 F. Supp. 2d at 22; *Perkins v. Orleans Athletic Club*, 429 F. Supp. 661, 667 (E.D. La. 1976) ("Those who elect a militant defense . . . [are responsible for] the time and effort they exact from their opponents.").

Although *Holzmann* concerned the more common situation of plaintiffs seeking fees from defendants, it applies with equal force to the facts here, as the FCA explicitly permits defendants to recover reasonable attorney's fees and expenses in a clearly vexatious case such as this. *See* 31 U.S.C. § 3730(d)(4). The fact remains that but for Omni's fraud, Defendants would not have incurred any of the fees or costs sought in their petition.

Despite Omni's gripes about the fees Defendants incurred with respect to attorney conferences, courts routinely recognize that the collaboration of multiple attorneys does not indicate that there was a duplication of effort.[1]

> Given the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic. Consequently, the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing. Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue.

*See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001)") (internal citation omitted). "And where the deployment of multiple attorneys on a single project is reasonable, that staffing pattern inevitably results in a need for some amount of coordination, including intramural conferencing. Everything turns on the reasonableness of the staffing patterns employed and the overall time spent." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 14 (1st Cir. 2011) (citing *Torres–Rivera* v. O'Neill–Cancel, 524 F.3d 331, 336 (1st Cir. 2008) (explaining that reasonableness in the context of time management "is largely a matter of informed judgment")).

[1] *See Equal Emp't Opportunity Comm'n v. Local 638 . . . Local 28 of the Sheet Metal Workers' Int'l Ass'n*, No. 71 Civ. 2877, 1991 U.S. Dist. LEXIS 18189 (S.D.N.Y. Dec. 18, 1991) ("Having two attorneys research and participate in drafting a brief is a common practice and therefore not necessarily duplicative."); *New York State Ass'n of Retarded Children v. Carey*, 711 E2d 1136, 1146 (2d Cir. 1983) (prevailing parties not barred from receiving fees for multiple lawyers).

Had they not conferred to discuss case strategy and delegate tasks to attorneys on the case, counsel would have been *less* efficient—not more. In response to Omni's sprawling Amended Complaint, which contained numerous theories of liability (none of which Omni succeeded on), Defendants mounted an appropriately vigorous defense, in part, by assigning different attorneys as primarily responsible for different elements of the case. To maximize efficiency, the attorney team met weekly to remain apprised of tasks assigned to each attorney, discuss staffing of future tasks, and develop a cohesive strategy.[2] These team meetings ultimately *reduced* the fees Defendants incurred rather than increase them, as the group setting meant that discussions occurred only once rather than separately with individual attorneys.

Time spent conferencing and engaging in other collegial activities is a necessary and productive part of the litigation process, is an entirely reasonable expenditure of time, and is thus fully compensable. *See Sigley v. Kuhn*, Nos. 98-3977, 99-3531, 2000 WL 145187, at *8 (6th. Cir. 2000) ("time spent by counsel discussing the case is properly compensable, and the mere fact that attorneys confer with one another does not automatically constitute duplication of efforts") (citing *Glover v. Johnson*, 138 F.3d 229, 252 (6th Cir. 1998)); *MCC Mgmt. v. Int'l. Bancshares Corp.*, No. CIV-06-1345-M, 2010, 2010 WL 3615606, at *13-14 (W.D. Okla. Sept. 28,2010) (allowing compensation for conferencing when three firms represented plaintiff and held weekly conference calls to review litigation strategy). "[A]n appropriate division of labor between a lead attorney and more junior lawyers necessarily entails consultation." *Lan Global, Inc. v. Alchemy Telco Solutions US, LLC*, No. 22-cv-11783-AK, 2025 WL 2453653, at *7 (D. Mass. Apr. 30, 2025); *cf. Thayer v. Thayer v. City of Worcester*, No. 13-cv-40057, 2017 WL 1190366, at *4 (D. Mass. Mar. 29, 2017) (In civil rights case staffed by nine attorneys of varying experience, Court "would have expected

[2] Defendants incurred fees of approximately $145,500 for weekly team meetings, or approximately 6.97% of the total fees incurred. *See* Orkand Aff. at ¶ 2.

much of the drafting and research to have been done by senior to lower level associates, whose work would then be reviewed and edited by more senior attorneys.”).

Duplication is permitted when it is justified: for example, multiple attorneys may attend a deposition if one is questioning and the other handling documents, or multiple attorneys may be involved where the litigation is complex and attorneys are responsible for “discrete aspects” of the litigation. For example, in *Rosie D. v. Patrick*, 593 F. Supp. 2d 325, 332 (D. Mass. 2009), Judge Ponsor denied a request to reduce duplicative time in a case that was “enormously complex, both factually and legally. The number of attorneys comfortably matched the complexity of the litigation.” He noted that the defendants in that case “litigated this case to the hilt,” unsuccessfully appealed to the First Circuit, engaged in discovery that was “very contentious and resulted in numerous motions,” and involved “numerous lay and expert witnesses.” *Id.* He noted, “Conferencing, to a significant but not excessive extent, was simply a necessary element of managing the litigation competently.” The court found, “These efficiencies helped to lower the necessary hours.” *Id.*

In this case, there were 18 depositions of fact witnesses conducted over one month, plus four depositions of expert witnesses. As is typical in a case involving multiple fact witnesses, many witnesses provided testimony on the same or related topics, with later witnesses testifying before earlier witnesses’ transcripts would be available for review. As such, having an attorney present to take detailed notes, identify rebuttal testimony and exhibits, and identify areas of inquiry for upcoming depositions was critical to the efficient and timely completion of numerous depositions. Furthermore, one of Defendants’ attorneys, Danielle Tangorre, is a subject matter expert on laboratory compliance matters, and her presence was often required to advise attorneys examining Omni witnesses of necessary context. *See* Orkand Aff. at ¶ 3.

Omni also takes issue with the fact that Defendants reviewed, redacted, and sought to claw back certain inadvertently produced documents. What Omni fails to note, however, is that those same documents would have been reviewed and redacted in the normal course of this litigation regardless notwithstanding that they were previously produced to DOJ. The costs were simply incurred later rather than earlier. Moreover, Omni chose to file a motion to compel the production of these documents when Defendants clawed them back from their production to the government. Defendants had no choice but to oppose Omni's motion. Omni's contention that Defendants' counsel block billed such that "it is difficult to identify with certainty the amount of fees Defendants incurred on this issue" is easily dispelled by even a cursory review of the relevant time entries, reflecting that the overwhelming majority of time spent on this issue is reflected in separate entries for conferring, strategizing, researching, review of the documents, and the defense of a motion to compel the production of privileged documents filed by Omni. *See*, *e.g.*, Orkand Aff. at ¶ 4 and Exhibit B thereto. Moreover, it is not block billing where time entries list a variety of topics discussed at a particular strategy conference, including topics relating to the inadvertent document production. With respect to the inadvertent production and Defendants' attorneys' invoices generally, counsel so rarely engaged in block billing such that an across-the-board fee reduction is not called for here. *See*, *e.g.*, *In re Volkswagen and Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 176 (D. Mass. 2015) ("Courts will not, however, impose a global penalty where block-billing is infrequent or relatively minor, or where most of the entries were reasonably recorded."); Orkand Aff. at Ex. B.

Finally, the time Defendants' attorneys spent on the initial document review, much of which was outsourced to an outside firm to reduce costs and maximize efficiency, was plainly appropriate. The outside firm's role was able to conduct the initial review of documents for

responsiveness to Omni's discovery requests, which were exceedingly broad in scope given Omni's wide-ranging theories of liability. However, Defendants' attorneys were still heavily involved in developing the review protocol, managing the third-party reviewers, and conducing second-level and quality control reviews to verify the appropriateness of the third-party reviewers' responsiveness and privilege designations.

This was a bitterly contested case that required six attorneys to bill more than 300 hours on this matter *over the course of three years.*[3] *See* Orkand Aff. at ¶ 5. These attorneys billed an average of between 12 hours per month during that period. *Id.* at Ex. C. This is hardly excessive when considering that Defendants were required to mount a significant defense to Omni's aggressive and formidable prosecution of its claims. This case touched nearly all aspects of the Defendants' business, including the development and design of its PCR UTI testing, its sales tactics, the manner in which it compensated its sales staff, and the medical necessity of PCR UTI testing generally, among others. Their defense required engaging in routine litigation activities, including document review and production, preparing for and attending numerous depositions, and engaging in routine motion practice, including two dispositive motions.[4] Defendants not only successfully defeated Omni's claims with respect to each of these issues, they uncovered Relator's own fraud in the process, in which at least thirteen laboratories other than MD Labs were victims.

[3] This amount of time is not unusual for a case as sprawling as this; indeed, the partner leading Omni's *qui tam* effort billed more than 300 hours over the course of just 18 months to draft Omni's original complaint and disclosure to the DOJ. *See* ECF No. 148-1 at 2 (stating Attorney McCormack billed 332.9 hours at a rate of $650 hours from August 15, 2018 to February 11, 2020).

[4] Omni also takes issue with the fact that Defendants prepared, but did not ultimately file, a motion to strike related to Omni's inclusion of facts related to resolved claims. Counsel for both parties discussed this issue via letter, with Defendants ultimately determining that it would address the inappropriate scope of Omni's allegations relating to resolved matters in discovery. *See* October 13, 2022 letter to Omni; October 18, 2022 letter to Defendants; October 27, 2022 letter to Omni, attached hereto as **Exhibit 1**. That Defendants considered, but did not ultimately file, a motion to strike on this issue in fact reflects the appropriate exercise of judgment as to what matters needed be resolved by the Court. Indeed, had Defendants filed the motion to strike (which would also have been appropriate, under the circumstances), Omni would not only have expended its own resources in opposing the motion, but any subsequent reply briefing and hearing attendance would be included in the fees Omni must now pay to Defendants.

As Omni argued in connection with its own fee motion in this case, where the situation was reversed, "'[where] a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee'"—even where the plaintiff failed to prevail on every contention raised in the lawsuit. ECF No. 92 at 14 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 569 (1986) (internal quotation omitted)). Here, Defendants prevailed on every contention raised by Omni in its lawsuit. But for Deligdish's fraud, they would not have incurred *any* fees or costs in connection with its PCR UTI testing. Defendants are entitled to be fully compensated for their defense.

**FEES INCURRED FOR FEE PETITION**

Courts routinely allow attorneys to seek fees related to their fee motions in FCA cases. *See* Memorandum and Order (ECF 158) (citing *United States ex rel. Sant v. Biotronik, Inc*., 716 F. App'x 590, 593 (9th Cir. 2017) (affirming district court's decision to grant some but not all fees-on-fees "in proportion to the applicant's success on the underlying petition"); *Simring v. Rutgers*, 634 F. App'x 853, 861 (3d Cir. 2015) (explaining that, for relator fees-on-fees, "the principal question is whether the product of the relevant hourly rates and the amount of time spent by all the lawyers and paraprofessionals involved is reasonable"); *United States ex rel. Bisk v. Westchester Med. Ctr*., 06cv15296-LAK-FM, 2016 WL 8254797, at *11 (S.D.N.Y. Aug. 5, 2016) ("Section 3730(d) allows an award of 'reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.' Section 3730(d)."))

On three occasions before filing their fee petition, Defendants attempted to negotiate a settlement with respect to the amount of fees owed for a substantially reduced amount to avoid the necessity of motion practice on this issue. However, counsel for Omni did not respond to any of these attempts at settlement. Orkand Aff. at ¶ 6. The fees incurred to date in connection with preparation of Defendants' Petition for Attorneys' Fees and Costs, Motion for Temporary

Restraining Order, and Motion for Prejudgment Attachment total $45,087.50 and should be added to the reasonable fees and costs incurred in the litigation. *See id*. at ¶ 7.

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Petition for Attorneys' Fees and Costs, Defendants respectfully request that this Court grant their Petition and award fees in the amount of $2,043,918.79, an additional $45,087.50 incurred with preparation of Defendants' Petition for Attorneys' Fees and costs, plus any additional fees and costs incurred in connection with the hearing on the petition and collection efforts on any judgment, and enter judgment for Defendants in that amount.

/ / /

Dated: February 17, 2026

Respectfully submitted,

MD SPINE SOLUTIONS LLC, D/B/A
MD LABS INC., DENIS GRIZELJ AND
MATTHEW RUTLEDGE

By their attorneys,

*/s/ Seth B. Orkand*
Seth B. Orkand (BBO #669810)
Julianna M. Charpentier (BBO #703284)
ROBINSON & COLE LLP
53 State Street, 32nd Floor
Boston, MA 02109
Tel: (617) 557-5915
Fax: (617) 557-5999
sorkand@rc.com
jcharpentier@rc.com

Edward J. Heath (admitted *pro hac vice)*
Kevin P. Daly (BBO #675644)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel: (860) 275-8200
Fax: (860) 275-8299
eheath@rc.com
kdaly@rc.com

Danielle H. Tangorre (admitted *pro hac vice*)
ROBINSON & COLE LLP
Chrysler East Building
666 Third Avenue, 20th Fl.
New York, NY 10017
Tel: (212) 451-2900
Fax: (212) 451-2999
dtangorre@rc.com

**CERTIFICATE OF SERVICE**

I, Seth B. Orkand, hereby certify that on February 17, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ Seth B. Orkand*
Seth B. Orkand